UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DEBORAH LEWIS and QUINN WOODARD, on behalf of themselves and a class of all others similarly situated, | ) ) ) | Case No. 06-CV-00478-S-EJL |
| Plaintiffs, | ) ) ) | MEMORANDUM ORDER |
| vs. | ) ) ) | |
| FIRST AMERICAN TITLE INSURANCE COMPANY, a foreign corporation, | ) ) ) | |
| Defendant. | ) ) ) | |

Plaintiffs Deborah Lewis and Quinn Woodard bring this action pursuant to an Amended Class Action Complaint alleging that Defendant First American Title Insurance Company ("First American") illicitly failed to discount the premium for the lender's policy of title insurance purchased in connection with refinance transactions. First American has moved to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure12(b)(6). The motion is now ripe. The Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, these matters shall be decided on the record before this Court without a hearing.

## Background

Plaintiff Lewis resides in Idaho. In February of 2004, Lewis purchased a policy of title insurance in conjunction with obtaining a mortgage on her home. In November of 2005, Lewis refinanced the mortgage. Lewis's mortgage lender required her to purchase a title insurance policy naming the mortgage lender as the insured. Lewis alleges that First American, the agent/insurer, failed to discount the premium of the title insurance as required by Idaho law when a title insurance policy is reissued within two years of the purchase date of the original policy.

Plaintiff Woodard is a resident of New Mexico. In January of 2007, he refinanced the existing mortgage on his home and paid First American to reissue a title insurance policy to his new mortgage lender. Similar to Plaintiff Lewis, Woodard alleges that he was entitled to a discounted reissue title insurance premium, but that First American charged a more expensive rate in contravention of New Mexico law.

Plaintiffs allege various violations of the law of each Plaintiff's respective state. Specifically, Plaintiffs allege eight causes of action against First American: (1) declaratory and injunctive relief; (2) violation of title insurance rate filing statutes; (3) breach of contract; (4) violation of consumer protection statutes; (5) conversion; (6) unjust enrichment; (7) breach of the duty of good faith and fair dealing; and (8) money had and received. First American, in turn, asserts that all eight claims fail as a matter of law "because none identifies a legal or contractual duty that entitles [Plaintiffs] to any relief." (Mems. in Supp. of Motions to Dismiss Pl. Lewis and Pl. Woodard at 1).

**Standards**

On a motion to dismiss, the Court's review is generally limited to the contents of the complaint. Warshaw v. Xoma Corp., 74 F.3d 955, 957 (9th Cir.1996). The Court must "take as true all allegations of material fact stated in the complaint and construe them in the light most favorable to the nonmoving party." Warshaw, 74 F.3d at 957. The Court is not required, however, to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. See Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999).

When analyzing the viability of the Plaintiffs' state law claims, the Court is mindful that it must apply the substantive law of the relevant state, as interpreted by that state's supreme court. See Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 920 (9th Cir.1988). "[W]here the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 186 (9th Cir. 1989), cert. denied, 493 U.S. 1058 (1990).

**Discussion**

Consistent with the parties' briefing, the Court will analyze each of the Plaintiffs' claims in turn, but in a slightly different sequence than presented by the parties.

**1. Violations of Rate Filing Statutes**

Pursuant to both Idaho and New Mexico state law, First American is required to file rate schedules for title insurance premiums with the state insurance department of those

MEMORANDUM ORDER- 3

jurisdictions. (See I.C. §§ 41-2705 to 41-2707; N.M.S.A § 59A-30-1 et seq.). Because Plaintiffs allege that First American charged a reissue rate that exceeds the rate schedules, Plaintiffs seek to sue under the insurance code of each state. Plaintiffs concede, however, that the relevant statutory provisions do not provide an express private right of action based on a violation of the rate schedules. Instead, Plaintiffs urge the Court to imply a private right of action.

Plaintiffs argue that the Court should create such a right of action in Idaho because it is a "necessity" and because "[n]o Idaho precedent holds to the contrary." (Resp. at10-13). But these reasons are not sufficient to justify the expansion of state law. See City of Philadelphia v. Lead Indus. Ass'n, 994 F.2d 112, 123 (3d Cir.1993) ("A federal court may act as a judicial pioneer when interpreting the United States Constitution and federal law. In a diversity case, however . . . . [f]ederalism concerns require that we permit state courts to decide whether and to what extent they will expand state common law.").

A federal court follows the precedents of the state's highest court and predicts how that court would decide the issue presented. The Idaho Supreme Court has made clear that "in determining whether a statute impliedly authorizes a private cause of action, the focus of [the] inquiry is whether the legislature intended to create such a private remedy." Yoakum v. Hartford Fire Ins. Co., 923 P.2d 416, 421 (Idaho 1996). As First American notes, the Idaho legislature has given the director of the department of insurance the power to control and supervise the business of title insurance as set forth in the insurance code. See I.C. § 41-2705. On the other hand, Plaintiffs fail to point to anything, such as legislative history or statutory language, that indicates an intent by the legislature to provide a private remedy under the statute. "In the absence of strong indicia of a contrary legislative intent, courts must conclude that the legislature provided precisely the remedies it considered appropriate." Yoakum, 923 P.2d at 421. Accordingly, the Court has no reason to believe that the Idaho Supreme Court

MEMORANDUM ORDER- 4

would choose to embrace the claim Plaintiffs urge here.[1] See City of Philadelphia v. Beretta U.S.A. Corp., 277 F.3d 415, 421 (3rd Cir. 2002) (explaining that "it is not the role of a federal court to expand state law in ways not foreshadowed by state precedent").

Similar to the Idaho Supreme Court, the Supreme Court of New Mexico considers legislative intent to be the determining factor in deciding whether a statute creates an implied private right of action. Key v. Chrysler Motors Corp., 918 P.2d 350, 354 (N.M. 1996). And again, Plaintiffs have not cited any legislative history or statutory language that would permit a conclusion that the New Mexico Supreme Court would create such a right. Instead, the Plaintiffs point the Court to a case where they believe the New Mexico Supreme Court already has spoken on this matter, Ruiz v. Garcia, 850 P.2d 972 (N.M. 1993).

However as First American notes, Ruiz allows a negligence claim to go forward after finding the requisite "tort duty" under the title insurance laws. 850 P.2d at 976 (stating that "the existence of a tort duty is a policy question that is answered by reference to legal precedent, statutes, and other principles of law"). Ruiz, therefore, does not stand for the proposition that there is an implied private right of action to sue directly on a violation of the title insurance rate filing statutes. Instead, it permits a tort claim for a "failure to discover a defect of title." Id. Plaintiffs have not brought a claim sounding in tort and thus Ruiz is inapposite.

---

[1] The rareness of finding the necessary legislative intent to imply a private right of action is demonstrated by Plaintiffs' citation to a case from 1914 as the only example where the Idaho Supreme Court arguably permitted a claim to go forward as an implied private right of action. (Resp. at 10-11 (citing State, For Use of Mills, et al. v. American Surety Co. of New York, 145 P. 1097 (Idaho 1914)).

The Court finds no evidence of legislative intent to permit an implied private right of action to sue for an alleged violation of the title insurance rate schedules, and the Plaintiffs' claim asserting the same, Count Two, will be dismissed.

## 2. Breach of Contract, Unjust Enrichment & Breach of Duty of Good Faith & Fair Dealing

### a. Breach of Contract

Even though an express contract for title insurance coverage exists between the Plaintiffs' mortgage lender and First American, Plaintiffs argue that an implied contract also exists between Plaintiffs and First American that covers the arrangement for purchasing the title insurance. According to Plaintiffs, First American breached this contract when it charged a premium in excess of the statutory rate schedule.

First American counters this claim by relying on a principle of both Idaho and New Mexico state law: "an implied contract only arises in the absence of an express contract covering the subject." (Reply at 5). First American alleges that the "policies of title insurance entered into between First American and Plaintiffs' mortgage lenders include terms governing the payment of premiums." (Id.). Consequently, First American asserts that "Plaintiffs are therefore precluded from bringing causes of action for breach of an implied contract that purportedly require First American to charge a rate other than that provided in the lenders' policy." (Id.).

First American's assertion as to the precise agreement controlling the premium payment may or may not ultimately prove to be true. But it is premature for the Court to make any such determination on a motion to dismiss. On the contrary, the Court must "take as true all allegations of material fact stated in the complaint and construe them in the light

MEMORANDUM ORDER- 6

most favorable to the nonmoving party." Warshaw, 74 F.3d at 957. Thus, at this stage of the proceedings the Court is required to believe the allegations of the Plaintiffs, not the Defendant.

Here, Plaintiffs allege that First American "entered into identical implied purchase contracts with plaintiffs," (Am. Compl. ¶ 58); that Plaintiffs agreed to purchase a title insurance policy which named the mortgage lenders as beneficiaries, (Am. Compl. ¶¶ 32, 41); that Plaintiffs paid the premium to First American, (id.); and that First American accepted payment and issued the policies in consideration thereof, (Am. Compl. ¶¶ 32-35, 41-44). The applicable reissue premium for the purchase price of the title insurance has been identified by state law as the same as the premium set forth in the rate schedules. See e.g., Inland Title Co. v. Comstock, 779 P.2d 15, 17 (Idaho 1989) ("Although this contract did not specify what the fee was, it was readily ascertainable by reference to statute and regulation . . . which establish the premium rate as a matter of law."). And Plaintiffs allege that First American breached the implied contract by charging more than allowed by the statutory rate schedules. (Am. Compl. ¶ 61).

Plaintiffs have therefore made out a claim for breach of an implied contract. See e.g., Randleman v. Fidelity Nat. Title Ins. Co., 465 F. Supp. 2d 812, 818-21 (N.D. Ohio 2006) (permitting implied contract claim on similar allegations); Baker v. Boren, 934 P.2d 951, 956-57 (Idaho Ct. App. 1997); Garcia v. Middle Rio Grande Conservancy Dist., 918 P.2d 7, 11 n.1 (N.M. 1996). Accordingly, the motion to dismiss Count Three will be denied.

**b. Unjust Enrichment**

First American moves to dismiss Plaintiffs' unjust enrichment claim on the same grounds as argued on the implied contract claim: that an express contract between the lenders and First American bars such a claim. It follows from the discussion above that the Plaintiffs'

MEMORANDUM ORDER- 7

claim for unjust enrichment, Count Six, may go forward. See e.g., Randleman, 465 F. Supp. 2d 812 at 824-25 (permitting unjust enrichment claim on similar allegations); Beco Const. Co., Inc. v. Bannock Paving Co., Inc., 797 P.2d 863, 866 (Idaho 1990) (explaining that the doctrine of unjust enrichment sounds in implied contract or quasi contract); Ontiveros Insulation Co., Inc. v. Sanchez, 3 P.3d 695, 699 (N.M. Ct. App. 2000) (same).

### c. Breach of Duty of Good Faith & Fair Dealing

First American argues that a claim alleging breach of the duty of good faith and fair dealing can arise only from an express contract and not, as here, where the Plaintiffs are alleging an implied contract. But a review of the cases cited by First American in support of this proposition show that what concerns the courts is not whether the contract is express or implied but whether there is in fact a contract or contract term that has been breached. (Reply at 8-9 (citing Irwin Rogers Ins. Agency, Inc. v. Murphy, 833 P.2d 128, 132-33 (Idaho Ct. App. 1992) (explaining that "[i]n order to establish the impairment of a contractual right or benefit, the party asserting the breach of the covenant must first establish that such a right or benefit existed"); In re Wiggins, 273 B.R. 839, 878 (Bankr. D.Idaho 2001) (same); Totman v. Eastern Idaho Technical College, 931 P.2d 1232, 1236 (Idaho Ct. App. 1997) (same); Lettunich v. Key Bank Nat. Ass'n, 109 P.3d 1104, 1110 (Idaho 2005) (same); Bourgeous v. Horizon Healthcare Corp., 872 P.2d 852, 857 (N.M. 1994) (same).

This is because a claim for a breach of the duty of good faith and fair dealing arises only when the underlying contract has been breached. There is not in this regard necessarily a distinction between a breach of an express agreement or an implied agreement. Indeed, it appears that state law does permit a claim for the breach of the duty of good faith and fair dealing upon a breach of an implied contract. Nilsson v. Mapco, 764 P.2d 95, 99-100 (Idaho Ct. App. 1988) (acknowledging the possibility of a claim for breach of the duty of good faith

MEMORANDUM ORDER- 8

and fair dealing in "contracts . . . formed by either express or implied agreement"); Ruegsegger v. Western NM University Bd. of Regents, 154 P.3d 681, 690 (N.M. Ct. App. 2006) (same). Therefore, the motion to dismiss this claim, Plaintiffs' Count Seven, will be denied.

### 3. Conversion and Money Had and Received

#### a. Conversion

First American contends that under the relevant case law a cause of action for conversion can only be maintained when the object in dispute is specific, identifiable personal property or if money, it can be described or identified as a specific chattel. Because Plaintiffs seek to recover funds associated with the alleged excessive premium payment, First American argues that the concept of conversion does not apply.

Plaintiffs do not really disagree with First American's characterization of the law, but appear to assert that the alleged overcharges are "identified as a specific chattel." But case law rebuts this notion. Where, as here, alleged misappropriated funds are received by defendant and placed in a general account, they have "lost any specific identity" that would permit a conversion claim. Warm Springs Properties, Inc. v. Andora Villa, Inc., 526 P.2d 1106, 1108 (Idaho 1974) (explaining that plaintiff is "foreclosed from maintaining this action on the theory of conversion because once the funds were received by [defendant] they went into its general checking account and lost any specific identity"); McNeill v. Rice Engineering & Operating, Inc., 128 P.3d 476, 485-86 (N.M. Ct. App. 2005) (same). Accordingly, Plaintiffs' claim for conversion, Count Five, will be dismissed.

MEMORANDUM ORDER- 9

**b. Money Had and Received**

First American argues that Plaintiffs' claim for money had and received is just another name for a claim of unjust enrichment and therefore it should be dismissed as redundant. Having reviewed the case law on the matter, the Court agrees and Plaintiffs' Count Eight will be dismissed. Roberts v. Hollandsworth, 582 F.2d 496, 498 (9th Cir. 1978) (explaining that under Idaho law a claim for money had and received is the same as an unjust enrichment claim); Miller v. Bourdage, 653 P.2d 177, 180 (N.M. Ct. App. 1982) (defining unjust enrichment as the equivalent of money had and received).

**4. Violation of Consumer Protection Statutes**

Plaintiff Woodard alleges that First American violated the consumer protection statutes of New Mexico, N.M.S.A § 57-12-1, et seq. (the "Unfair Practices Act"), by charging him a reissue premium for title insurance in excess of the statutory rate schedule.[2] First American, in turn, contends that Woodard has failed to allege all the necessary elements, with sufficient particularity, to proceed on this claim.

To state a claim under the New Mexico Unfair Practices Act, Plaintiff Woodard must set forth the following: (1) First American made an oral or written statement that was false or misleading; (2) the false or misleading statement was knowingly made in connection with the sale of goods or services; (3) the representation occurred in the regular course of First American's trade or commerce; and (4) the representation "may, tends to, or does, deceive or mislead any person." Russey v. Rankin, 911 F.Supp. 1449, 1459-60 (D.N.M. 1995).

---

[2]  Plaintiff Lewis does not bring a similar claim pursuant to Idaho law. (Am. Compl. ¶¶ 63-70; Resp. at 16 n.11).

MEMORANDUM ORDER- 10

Under any pleading standard, Plaintiff Woodard has adequately alleged these elements. Woodard alleges that as a customary business practice First American deceptively charged in excess of the authorized official rate filings by knowingly misrepresenting the legally allowable price of its policy premium, and that such a knowing misrepresentation was made to him by First American, acting as settlement agent and/or title insurance agent, when he refinanced his existing mortgage in January of 2007. (Am. Compl. ¶¶ 40-42, 46, 64, 70). Woodard further alleges that this misrepresentation resulted in a premium with a 40% overcharge that he paid to First American. (Am. Compl. ¶¶ 42-47, 64-70).

Thus Woodard has sufficiently stated a claim under the Unfair Practices Act, and the motion to dismiss Count Four will be denied.

### 5. Declaratory and Injunctive Relief

Plaintiffs' request for declaratory and injunctive relief relate mainly to their effort to certify this matter as a class action. If so certified, and if Plaintiffs prevail on their claims, they ask for declaratory and injunctive relief that among other things would require First American to notify qualifying buyers of the discounted reissue rates and to charge the same.

Of course there has not yet been a determination on the issue of class certification. However, accepting as true the allegations stated in the Amended Class Action Complaint and construing them in the light most favorable to the Plaintiffs, the Court cannot conclude that it appears beyond doubt that the Plaintiffs are not entitled to class certification. See Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999). Therefore, it would be premature at this point to dismiss the Plaintiffs' claim, Count One, for declaratory and injunctive relief.

## ORDER

Based on the foregoing, and the Court being fully advised in the premises, it is **HEREBY ORDERED** that First American's Motions to Dismiss (docket nos. 16 &17) are **GRANTED in part** as follows: Counts Two, Five and Eight of Plaintiffs' Amended Class Action Complaint are **DISMISSED**. First American's Motions to Dismiss are **DENIED** with respect to all the Plaintiffs' remaining Counts.

**IT IS FURTHER ORDERED** that the referral to Magistrate Judge Larry M. Boyle shall be modified to include ALL pretrial matters, including the motion for class certification, stipulations and/or motions to modify any scheduling deadline.

DATED: **September 25, 2007**

*/s/ Edward J. Lodge*

Honorable Edward J. Lodge

U. S. District Judge

MEMORANDUM ORDER- 12