## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

DEBORAH LEWIS, on behalf of themselves
and a Class of all others similarly situated,

          Plaintiffs,

   v.

FIRST AMERICAN TITLE INSURANCE
COMPANY, a foreign corporation,

          Defendant.

Case No. 06 CV 00478 EJL

**DECLARATION OF RENNY
BRAYTON**

## DECLARATION OF RENNY BRAYTON

I, Renny Brayton, declare as follows:

1.     I am a Senior Regional Underwriter for First American Title Insurance Company ("First American") in Idaho, and I have personal knowledge of the facts set forth in this declaration.

2.     In my position with First American, I act as a liaison with First American's agents in Idaho and Montana. I am also the regional training coordinator for First American's direct operations and agents in Idaho and Montana.

3.     I have worked for First American since February 1976, and I have over 35 years of experience in the title insurance industry.

4.     From time to time, as circumstances warrant, First American proposes rates to the Idaho Department of Insurance, which approves those rates for use throughout the State of Idaho.

5.     I am responsible for filing these rate proposals with the Insurance Department, and have been responsible for those filings for the last seventeen years. Once filed with the

Department, First American is notified that its rate filing has been approved.  Relevant portions of First American's current Idaho rate manual are attached to this declaration as **Exhibit 1**.

6.      Some lender's policies issued in Idaho qualify for a "Reissue Rate" under section VII.A.5 of the rate manual.  This discount, which is 50% of the standard rate, is given when a qualifying policy is issued within two years after the effective date of a prior lender's policy.  It only applies when "the prior policy or a copy thereof is presented to the issuing company and shall be retained in the issuing company's file, or in the absence thereof, reasonable proof of insurance is provided to the issuing company" according to the express terms of the rating filing.

7.      The reissue discount is not available for that portion of the loan policy which represents "extended coverage surcharge" of 30%.

8.      The reissue discount also only applies up to the lesser of the amounts of the two policies at issue.

9.      The filed rates for individual products change from time to time.  Reverse engineering the rates from a review of single HUD-1 is difficult or impossible because the charges showing on a HUD-1 may represent a rate which was proper when given, but no longer applies.

### Direct Operations

10.      First American maintains direct operations in the Boise area in Idaho where it writes title insurance policies directly for lenders and homeowners without the use of an agent.

11.      This process generally begins with an order for a title commitment from a realtor, mortgage broker, or lender.

12.     First American prepares a title commitment which lists "exceptions" to the proposed title insurance policy, including prior unsatisfied mortgages, easements, restrictive covenants, etc. The title commitment identifies the premium for the policy.

13.     The title commitment also identified any prior unsatisfied deeds of trust recorded against the property.

14.     In order to determine whether a reissue discount applies, First American must determine whether a lender's policy was issued within two years of the date of the new proposed policy.

15.     If a First American title examiner discovers a first mortgage to an institutional lender in the chain of title within the two-year lookback period, he or she may assume that such a mortgage was insured and may apply the reissue discount to that qualifying transaction.

16.     If the title examiner discovers a prior junior deed of trust (that is, not a first mortgage), he or she will examine the recorded deed to determine who recorded it. The recorder's stamp identifies the entity that recorded the document. Most deeds of trust recorded in Idaho are recorded by title companies. The title examiner will then contact the recording title company to determine whether the junior mortgage was insured such that the borrower qualifies for the reissue discount. Some title companies will not provide this information. If it was insured, and otherwise qualifies for the discount, the title examiner then calculates the reissue discount based on the lower of the two policy amounts and applies the discount. If it was not insured, no discount is given.

### Agents

17.     First American has contracts with between forty and fifty different agents operating in the state of Idaho who are authorized to issue First American title insurance policies.

18.     These agency agreements provide that for any given policy, the agent retains a fixed percentage of the premium and remits only a small portion to First American. The percentage split varies from agent to agent and is negotiated between the agent and First American.

19.     It is my understanding that First American agents in Idaho use roughly the same procedure as First American's direct operations in determining whether or not to give a reissue rate in any given transaction.

20.     One difference between direct operations and agents is that some agents in Idaho put a requirement in schedule B(1) of the title commitment that a copy of the prior policy be produced before they will apply the reissue discount in a given transaction. This is consistent with the reissue rate calculation set forth in the filed and approved rate manual.

### Extended and Eagle Coverage

21.     First American offers both extended coverage policies and Eagle policies in Idaho. These policies offer additional protection against standard exceptions that do not show up in a regular title search such as adverse possession.

22.     Typically, lenders purchase extended loan coverage policies to obtain greater coverage. The premium for an extended coverage policy is 130% of the basic rate.

23.     Eagle policies are purchased in some transactions. The premium for an Eagle owner's policy is 110% of the basic rate; the premium for an Eagle lender's policy is 140% of the basic rate.

24.     Because of these various rates, it is virtually impossible to tell from the premium whether the loan was insured with an Eagle policy, an extended coverage policy, a basic rate, a

limited product rate, or was given a reissue discount, without looking at the complete file for the transaction.

## Plaintiff's HUD-1 Review

25.     I was asked to review seven HUD-1 Settlement Statements that the plaintiff attached to her class certification motion that represented transactions that occurred in the state of Idaho.  I reviewed these HUD-1s.

26.     First American did not overcharge anyone in these seven transactions.

27.     Of the seven HUD-1s, only one reflected a transaction in which a First American title insurance policy was issued.  This was the Maher HUD-1 for the property at 11880 Purple Sage Road, Middleton, Idaho 83644.

28.     In the Maher transaction, though, the Mahers were given a reissue discount of $230.75. This discount is clearly marked on line 1114 of their HUD-1.

29.     The other six HUD-1s reflected transactions in which title insurance policies were issued by Old Republic National Title Insurance Company.

## Summary

30.     In order to determine the appropriate rate for any given transaction, you cannot just examine the HUD-1 Settlement Statement and the title commitment or chain of title.  In addition, to correctly calculate the premium rate, you need to know the liability amount of any prior insurance policy and whether one existed.  This can involve locating the actual recorded document to discover who recorded it and contacting that title company to determine whether the recorded document was insured.

31.     In addition, because many policies are issued at the extended rate, you also need to look at the transaction file to see the lender's instructions or the actual title insurance policy to see whether it is an extended coverage policy.


I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on August ___29___, 2008.

_____
Renny Brayton

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of September, 2008, I filed the foregoing Declaration of Renny Brayton electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Benjamin A. Schwartzman
802 W. Bannock Street, Suite 700
Boise, Idaho 83702
bas@baslawgroup.com

Paul J. Augustine
Law Offices of Paul J. Augustine, PLLC
1004 West Fort Street
P.O. Box 1521
Boise, Idaho 83701

Paul M. Weiss
Freed & Weiss, LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
paul@freedweiss.com

Attorneys for Plaintiffs Deborah Lewis

<u>        /s/ James M. Weiss        </u>

# EXHIBIT 1

RATE MANUAL


Promulgated by the

FIRST AMERICAN TITLE INSURANCE COMPANY



For The

STATE OF IDAHO


April 1, 2003

RATE MANUAL
TABLE OF CONTENTS

                                                        Page

   I.   INTRODUCTION                                       1

  II.   BASE RATE SCHEDULE                                1,6

 III.   APPLICATION OF BASIC RATE SCHEDULE -
        Basic Classifications of Title Insurance       1,2,3,4,5
           Policies

  IV.   SCHEDULE OF FEES - ENDORSEMENTS                  7-17

   V.   FEES AND RATING RULES SUPPLEMENTARY TO
        BASE RATE SCHEDULE                                18

        A.   General Rules - Amount of Insurance         18
        B.   Additional Chains of Title                 18,19
        C.   Property in More Than One County            19
        D.   Other Policy Forms and Endorsements         19
        E.   Commitments and Binders                     19
        F.   Cancellations - Inactive Orders            19,20

  VI.   OWNERS POLICIES                                 21,22,23

        A.   Double Sale                                 21
        B.   Owner's Reissue Rate                        21,22
        C.   Increase of Liability                       22
        D.   Simultaneous Issue                          22,23

 VII.   LOAN POLICIES                                    24-27

        A.   General                                     24
        B.   Extended Coverage Loan Policies             24
        C.   Construction (Temporary Loan Policies)      25
        D.   Loan Policy Insuring Future Advances        26
        E.   Assignment of Mortgages                     26
        F.   Short Form Residential Loan Policy          26
        G.   Limited Coverage Junior Loan Policy         26
        H.   ALTA Residential Limited Coverage Junior Loan  27
        I.   Standard Mortgages Assurance of Record Title  27
        J.   Tribal Trust Land Leasehold Loan Policy     27

VIII.   PURCHASER'S POLICIES                             28

  IX.   LEASEHOLD POLICIES                               28

X. GUARANTEES

LITIGATION GUARANTEES                              29

TRUSTEE SALE GUARANTEES                            29,30

LENDERS RESALE BINDER RATE                         30

LOT BOOK GUARANTEE                                 30

RECORDED DOCUMENT GUARANTEE                        31

MINERAL GUARANTEE                                  31

JUDGMENT AND TAX LIEN GUARANTEE                    31

LOT SPLIT GUARANTEE                                32

PROPERTY OWNER'S NOTICE GUARANTEE                  32

PROPERTY SEARCH GUARANTEE                          32

MECHANIC'S LIEN GUARANTEE                          32

SUBDIVISION GUARANTEE                              32

RATE MANUAL

of

FIRST AMERICAN TITLE INSURANCE COMPANY

April 1, 2003

## I.  INTRODUCTION

The rates for basic classification of title insurance policies and endorsements issued by Agents of First American Title Insurance Company are set forth hereinafter. These fees are the total title insurance fees charged the applicant including both the risk portion and the service of work portion but do not include charges for surveys, escrow closing services, recording fees or other monies advanced on behalf of an applicant.

An additional charge may be made for title insurance policies which involve an usual amount of work but the applicant shall be notified before the additional charge shall be obligatory upon him.

This manual is to be followed in accordance with Department Regulation No. 25 of the Department of Insurance, State of Idaho, as amended from time to time and in the event of any conflict between this manual and Regulation No. 25 the latter shall control.

As used herein the initials ALTA stand for American Land Title Association, the initials ILTA stand for Idaho Land Title Association, the initials CLTA stand for California Land Title Association, and the initials FA shall stand for First American Title Insurance Company.

## II.  BASE RATE SCHEDULE

See Exhibit A attached.

## III.  APPLICATION OF RATES
### BASIC CLASSIFICATIONS OF TITLE INSURANCE POLICIES

A.  The various types and designations of products regularly issued and covered by this rating schedule are as follows:

1)  ALTA Plain Language Commitment

2)  ALTA Loan Policy (1970) (includes ALTA Endorsement Form 1 coverage) Now, Form No. 1056-70 (4-6-90) ALTA Loan Policy - with ALTA Endorsement - Form 1 Coverage

3)  ALTA Loan Policy (1987) (includes ALTA Endorsement Form 1 coverage) Now, Form No. 1056-87 (4-6-90) ALTA Loan Policy Form 1 Now, Form No. 1056.92 (10-17-92) ALTA Loan Policy Form 1

4)  ALTA Owners policy - Form B - (1970) Now, Form 1402-70 (4-6-90) ALTA Owner's Policy Form B

Rm-1

(4/03)    IDAHO

5)      ALTA Owner's Policy Form B-1970, Form 1402 (1/70) (Amended 10-17-70,10-17-84)

6)      ALTA Loan Policy-1970 with ALTA Endorsement-Form 1 coverage, Form 1056 (1/70)
        (Amended 10-17-70, 10-17-84)

7)      ALTA Owners Policy (6/1/87) Now, Form 1402-87 (4-6-90) ALTA Owner's Policy Now,
        Form 1402.92 (10-17-92) ALTA Owner's Policy

8)      U.S. Policy Form (1963) Now U.S. Policy Form 1037 (Rev. 9/28/91)

9)      Oil Leasehold Policy CLTA Form 1138

10)     Mortgagee's Master Policy (6/1/87) (MMP) (includes ALTA Endorsement Form 1
        coverage)

11)     ALTA Short Form Residential Loan Policy (10/19/88) Now Form 1058.92 ALTA Short
        Form Residential Loan Policy (10-17-92)

12)     Trustee's Sale Guarantee

13)     Litigation Guarantee Now, Form 1282 (Rev.9/91) schedules Form 1283 (Rev.6/92)

14)     Lot Book Guarantee Now, Form 1282 (Rev.9/91)

15)     Recorded Document Guarantee, Form 1415

16)     Mineral Guarantee

17)     Judgment and Tax Lien Guarantee CLTA Form 10 (6/6/92)mod

18)     Lot Split Guarantee CLTA Form 1

19)     Property Owner's Notice Guarantee CLTA Form 25 (6/6/92)

20)     Property Search Guarantee CLTA Form 13 (6/6/92)

21)     Mechanic's Lien Guarantee CLTA Form 9 (6/6/92)
                        Rm-2                    (4/03) IDAHO

22)     Limited Coverage Junior Loan Policy, Form 1153-Id (12-19-96)

23)     ALTA Residential Limited Coverage Junior Loan Policy (10/19/96)

24)     ALTA Short Form Residential Limited Coverage Junior Loan Policy (10/19/96)

25)     ALTA Homeowner's Policy of Title Insurance (10/17/98) Form 1490 Eagle (6/98)

26)     Subdivision Guarantee

27)     ALTA Short Form Commitment (1/17/04)

28)     Short Form Commercial Loan Policy, Form 3700 (6/00) Form 3710 (6/00)

29)     Tribal Trust Land Leasehold Loan Policy Form 3500 (2/00)

30)     ALTA Expanded Coverage Residential Loan Policy (10/13/01)
        Second Generation EAGLE Loan Policy

31)     Standard Mortgages Assurance of Record Title (SMART)

32)     Eagle TSG Foreclosure Title Policy and Commitment

33)     FACT Master Loan Policy (Form 9200 (4/01)

B.      Unless otherwise provided for herein, the charge for issuance of Standard Coverage Policies shall be 100% of the base rate.

C.      Elimination of printed exception'(s) (Standard Coverage Exceptions) from any ALTA form of policy makes that policy an Extended Coverage policy and requires a surcharge in addition to the base rate as follows:

        1)      For extended coverage owners insurance the surcharge is computed at 5% of the base rate on one-to-four family residential property and all other types at 50% of the base rate.
        2)      For extended coverage lenders insurance the surcharge is computed at 30% of the base rate.
        3)      Except one-to-four family residential property, both extended coverage owners and lenders insurance issued simultaneously the surcharge for the owners policy is computed at 50% of the base rate and the surcharge for the lenders policy is none.
        4)      For both one-to-four family residential coverage extended owners and lenders insurance issued simultaneously the surcharge for the owner's policy is computed at 5% of the base rate and the surcharge for the lenders policy is computed at 30% of the base rate.

D. STANDARD COVERAGE EXCEPTIONS

1.              Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

2.              Any facts, rights, interest, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.

3.              Easements, claims of easement or encumbrances which are not shown by the public records.

4.              Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.

5.              (a) Unpatented mining claims;  (b)  reservations or exceptions in patents or in Acts authorizing the issuance thereof;  © water rights, claims or title to water,   whether or not the matters excepted under (a), (b), or © are shown by the public records.

6.              Any liens, or rights to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

                        Rm-4              (4/03)IDAHO

E. Oil Leasehold and Mineral Estate Policy -- 200% of Base Rate

F. Short Form Commitment 1342 is only to be used when contemplating the issuance of the ALTA Short Form Residential Loan Policy.

G. ALTA Homeowner's Policy of Title Insurance (10/17/98) Form 1490 EAGLE (6/98) 100% of base rate plus an additional 10% of the applicable premium.

H. ALTA Expanded Coverage Residential Loan Policy (10/13/01) Second Generation EAGLE Loan Policy 100% of base rate plus 40% (30% for extended coverage plus 10% expanded coverage)

I. EAGLE TSG Foreclosure Title Policy (ALTA 1992 Owner's Title Policy) and Commitment 110% of base rate

EXHIBIT "A"

## BASE TITLE INSURANCE RATE

### FOR FIRST AMERICAN TITLE INSURANCE COMPANY

Amount of Insurance:

Up to and including $10,000.00                                    $200.00

| Amount of Insurance | Rate per thousand or part thereof: |
|---|---|
| $10,001 - $30,000 | $6.00 |
| $30,001 - $50,000 | $5.50 |
| $50,001 - $100,000 | $3.50 |
| $100,001 - $300,000 | $3.00 |
| $300,001 - $1,000,000 | $2.25 |
| $1,000,001 - $5,000,000 | $2.00 |
| $5,000,001 - $10,000,000 | $1.70 |
| over $10,000,000 | $1.20 |

## IV. SCHEDULE OF FEES-ENDORSEMENTS

| Designation | Parallel Designation | Type | Charge or% of Schedule Availability Rate |
|---|---|---|---|
| FA Spreading | Spreading | Lenders | *** |
| FA Mortgage Priority | Mortgage Priority | Lenders | 10% of base for balance due, min. $40.00 |
| FA Seattle | Failure to Disburse Funds | Lenders | 30% of base, min., $50.00 |
| FA Seattle 2 | Disbursement-Mod. | Lenders | 10% of base,min. $100/max.$500. |
| FA Special Release | Partial Release | Lenders | $25.00. |
| FA Utilities Availability | | All Policies | 10%,max$500.vacant/new max$75 existing |
| FA Swap | Interest Rate Swap | Lenders | increased schedule charge |
| FA Special-Multiple Foreclosure | | Lenders Ext. | $50.00 |

***
a) If the borrower is an insured under a simultaneous issued owner's policy covering the additional land the rate is: 30% of the basic insurance rate based upon the value of the additional land together with any contemplated improvements.
b) If the borrower is an insured under an existing owner's policy covering additional land the rate is : 50% of the basic insurance rate based on the value of the additional land.
c) If the borrower has no owner's title insurance on the additional land the rate is: 90% of the basic insurance rate based on the value of the additional land together with any contemplated improvements.

| FA 4 | CLTA 115.1 | Condo Compliance | Lenders Ext. | $50.00 |
|---|---|---|---|---|
| FA 4.1 | ALTA 4.1 | Condo Compliance/ Assessments | Lenders Ext. | $75.00 |
| FA 5 | ALTA 5 | Planned Unit Development | Lenders Ext. | $50.00 |
| FA 5.1 | ALTA 5.1 | PUD-assessments | Lenders Ext. | $75.00 |
| FA 6 | CLTA 111.5 ALTA 6 | Variable Rate | Lenders | $25.00 |
| FA 6.1 | CLTA 111.6 ALTA 6.1 | Renegotiable Rate | Lenders | $25.00 |
| FA 6.2 | CLTA 111.8 ALTA 6.2 | Variable Rate w/ neg. amortization | Lenders | $25.00 |
| FA 7 | ALTA 7 | Manufactured Home | All Policies | $40.00 |
| FA 8.1 | CLTA 110.9 | Environmental | Residential Lend | $10.00 |
| 9 | FA 42/ALTA 9 | REM | Lenders Ext. | $40.00 |
| FA 11 | ALTA 11 | Modification Mtg/ Deed of Trust | Lenders Ext. | 5% of base rate of balance of note/min.$40. |
| FA 12 | ALTA 12 | Tie In | Lenders | $75.00 |
| FA 13 | FA 13 | Manufactured Home | All Policies | $40.00 |
| FA 14 | ALTA 14 | Future Adv-Priority | Lenders | $25 res/5% base,min $100 max $500 commercial |
| FA 14.1 | ALTA 14.1 | Future Adv-Knowledge | Lenders | $25 res/5% base, min$100 max $500 commercial |
| FA 14.2 | ALTA 14.2 | Future Adv-Letter | Lenders | 5% base, min$100/max$500 |
| FA 15.1 | ALTA 13.1 | Leasehold | Lenders Lease | None |
| FA 16 | ALTA 16 CLTA 128 | Mezzanine Financing | Owners Ext. | 10% of base rate |
| FA 16.1 | ALTA 13 | Leasehold | Owners Lease | None |
| FA 18 | ALTA 18 | Single Tax Parcel | All Policies | $25.00 |
| FA 19.1 | ALTA 19.1 | Contiguity-single | All Policies | 5% base/$50. min |

V.   FEES AND RATING RULES

SUPPLEMENTARY TO BASE RATE SCHEDULE

A.   General Rules - Amount of Insurance

1.   A policy insuring a fee shall be issued for not less than;

a)   the amount of the current sale price of the land and any existing improvements appurtenant thereto, or

b)   if no sale is being made, the amount equal to the value of the land and any existing improvements at the time of the issuance of the policy

2.   A loan policy shall be issued for not less than the full principal amount of the indebtedness secured by the mortgage lien and may include up to 20% in excess thereof to cover interest, foreclosure costs, etc.

3.   Leasehold policies covering leasehold estates with an unexpired term of fifty (50) years or more shall be for the full value of the land and existing improvements, and for less than fifty (50) years shall be for an amount, at the option of the insured, based upon

(a)   the total amount of the rentals payable for the primary term but not less than five (5) years, or

(b)   the full value of the land and any existing improvements together with any improvements immediately contemplated to be erected thereon.

4.   The amount of policies insuring contract purchasers shall be for not less than the full value of the principal payments.

5.   Insurance of lesser estates shall be written for the amount of the value of the estate at the time the policy is issued.

B.   Additional Chains of Title

1.   If more than one chain of title is involved, an additional charge shall be made of not less than $50.00 for each additional chain, unless the land covered by the additional chain has been previously insured.

Rm-18

(4/03)   IDAHO

2.    For the purpose of determining whether or not to make an additional charge an extra chain of title shall be considered as one involving property in a different block or section or under a different ownership for a substantial portion of the chain.

3.    If a policy is to cover two or more lots in a single tract and in common ownership, no additional charge need be made unless the parcels were in different ownerships within the last five years.

4.    Any charge made hereunder shall be made only once; that is it shall not be made upon reissue, but nothing herein shall prohibit imposition of an additional work charge on account of a multiplicity of tracts under search.

C.    <u>Property in More than One County</u>

When insurance is requested on property situated in more than one county, the portion lying in each county shall be considered as being separate for rating purposes, however only one policy need be issued.

D.    <u>Other Policy Form and Endorsements</u>

No policy or endorsement shall be issued except those filed with the Director of Insurance and the fees charged will be in accordance with this rate schedule. In the event a special endorsement which has not previously been used in Idaho is requested compliance shall be had with Section 3.28 of Department Regulation No. 25, except as to corrective endorsements and special endorsements based upon filed endorsements.

E.    <u>Commitments and Binders</u>

Commitments and Binders obligating the underwriter shall be issued only upon application for a policy of title insurance. Letter reports or opinions of title as such are not issued.

F.    <u>Cancellations - Inactive Orders</u>

1.    Prior to commencement of search, charges may be waived, after the issuance of the commitment or binder and prior to closing, the order may be canceled by

Rm-19

(4/03)   IDAHO

payment of a cancellation charge of fifty percent (50%) of the premium provided that any portion of a cancellation charge in excess of $100.00 may be waived. After closing the full schedule charge is applicable. The entire charge may be waived if it is apparent that through error the customer has entered duplicate orders in the same or competing companies.

2.      Unless a different time limit is expressed in the commitment or binder orders which have been open 6 months without a policy having issued, through no fault of the underwriter, except as to orders involving title litigation or new construction, shall be deemed inactive and billed at the cancellation rate.

3.      If no more than 180 days have elapsed since a cancellation charge was made and paid, a credit shall be allowed on any subsequent order. The credit will be computed as follows:

If no more than 90 days has elapsed the credit will be 100% of the cancellation fee paid.
If no more than 120 days has elapsed, the credit will be 75% of the cancellation fee paid.
If no more than 180 days has elapsed the credit will be 50% of the cancellation fee paid.

G.      Railroad Rights-of-Way

Any policy to be issued where the land to be insured is within a railroad right-of-way the fee is 200% of the base rate. In addition, there will be a non-refundable $250.00 work charge, which is not to be applied to the premium for the policy when issued.

(11/04) IDAHO

## VI.   OWNERS POLICIES

A.   Double Sale

No order will be held open to cover a double sale.   When a purchaser immediately resells, the premium will be charged both upon the transaction in which the property is acquired and that in which it is resold, unless the conveyance on the resale is recorded at the same time as that in the original transaction.

B.   Owner's Reissue Rate

When a policy (including all types listed herein at III, A,) is issued within two years after the effective date of a prior owner's policy or purchaser's policy naming applicant as the insured, the reissue premium shall be 75% of the base rate. (Re-issue rate applies only to that portion of the total amount of the new policy which constitutes "re-issue" insurance.)

The foregoing will be applied on the following conditions:

1.   The prior policy or a copy thereof is presented to the issuing company and shall be retained in the issuing company's file, or in the absence thereof, reasonable proof of insurance is provided to the issuing company.

2.   The reissue premium shall be based on the schedule of fees in effect at the time of reissue.

3.   Increased liability is to be computed in accordance with the base schedule of fees in the applicable brackets.

4.   If a customer is entitled to a credit for reissue, any title company can extend that credit notwithstanding it did not issue the prior policy.

5.   It is not necessary that the sale take place in order for an owner's reissue credit to be given.   For example, the insured on an owner's policy issued within two years may purchase a new owner's policy or any type policy listed herein at III, A, within that period for 75% of the base rate.

6.    The owner's reissue credit may be used on sales of a portion of the land originally insured but the credit must be apportioned to the land on a per lot or acreage basis.

7.    To calculate the owner's reissue rate, the current fee schedule will be used.  The owner's reissue rate is not a credit but a separate rate based on a percentage of the current rate.

8.    The owners re-issue rate may be used in conjunction with the issuance of a loan policy (including a policy insuring a second mortgage or Deed of Trust) within two years of an owners policy where the borrower is the insured owner. The 75% reissue rate shall be available except as to that portion of the total charge which represents extended coverage surcharge.  In this case there is no requirement that the owners policy be surrendered.

C.  Increase in Liability

     Liability under outstanding policies may be increased by endorsement as of date of issue, as agreed upon between the agent or underwriter and the insured.  Care must be exercised to determine that the policy liability represents the fair market value of the property.  In no case shall an owner's policy be written for less than the amount of the existing mortgage indebtedness, nor should a liability be assumed which is excessive.  The regular schedule charge shall be made for the increase.  Minimum fee shall be $50.00.  (See Endorsement Form FA 107.2).

D.  Simultaneous Issue

     1.    Standard Owners and Standard Loan Form  Policies will be written simultaneously at the schedule charge plus $75.00.

     2.    Standard Owners and Extended Loan Form  Policies will be written simultaneously at the schedule charge plus $75.00, plus the Extended Coverage Loan surcharge.

     3.    Standard Owners and EAGLE Loan Form Policies will be written simultaneously at the scheduled charge plus $75.00, plus 40% of the base rate.

4.   When an Extended Coverage Owners and Standard or Extended Coverage Loan Policy are issued simultaneously, the surcharge for the owners policy is computed at 50% of the base rate, plus $75.00, and the surcharge for the lenders policy is none, on all types except one-to-four family residential property.

5.   When both one-to-four family residential coverage Extended Owners and Standard or Extended Loan Policies are issued simultaneously, the surcharge for the owner's policy is computed at 5% of the base rate and the surcharge for the loan policy is computed at 30% of the base rate, plus $75.00.

6.   When EAGLE Owner's and Standard Loan Policies are issued simultaneously, the surcharge for the owner's is 10% of the base rate, plus $75.00 and the surcharge for the loan is none.

7.   When both Extended Coverage Owners and EAGLE Loan Policies are issued simultaneously, on a one-to-four-family residence, the surcharge for the owners is none and the surcharge for the loan policy is 40% of the base rate, plus $75.00.

8.   When both EAGLE Owner's and EAGLE Loan Policies are issued simultaneously, the surcharge for the owner's is none and the surcharge for the loan policy is 40% of the base rate, plus $75.00.

9.   When EAGLE Owner's and Extended Loan Policies are issued simultaneously the surcharge for the owner's is 10% of the base rate and the surcharge for the loan is 30% of the base rate, plus $75.00.

10.   Owners and Purchasers Policies covering identical lands are issued simultaneously, the charge for the larger policy shall be the schedule charge. The charge for the other policy will be 30% of the schedule charge, the minimum premium being $60.00.

11.   When Owners and Leasehold Policies covering identical lands are issued simultaneously, the charge for the larger policy shall be the schedule charge. The charge for the other policy will be 30% of the schedule charge, the minimum premium being $60.00.

12.   When two Owners Policies covering identical land are issued simultaneously, to different insureds, the schedule charge shall apply to the larger policy and the charge for the other policy shall be 30% of the schedule charge, the minimum premium being $60.00.

Rm-23

(4/03)   IDAHO

## VII.  LOAN POLICIES

A.       GENERAL

1.       Under no circumstances are Loan Policies to be written for less than the mortgage debt unless the mortgage covers other security of which the property described in the policy is but a part.  In that event, the policy shall be written for the amount of the unencumbered value of the land or the amount of the loan whichever is the lesser.

2.       Reasonable additions up to 20% to cover interest and anticipated charges may be insured as agreed upon between the applicant and the company.

3.       When two or more loan policies are written simultaneously covering the same property, the charge shall be calculated at the schedule charge based upon the aggregate amount of the mortgages, plus $75.00 for each additional policy.  When one or more of the policies is an extended coverage policy, charge the extended coverage surcharge calculated on the amount of such policy or policies.

4.       No order used in the acquisition of title shall be held open to be used as a basis for the issuance of a loan policy insuring a subsequently filed construction loan, without issuance of an owners policy and collection of a premium thereof.

5.       When all other conditions of Article VI B herein are met, a 50% reissue rate shall be available upon a Loan Policy except as to that portion of the total charge which represents extended coverage surcharge.

B.       Extended Coverage Loan Policies

Extended coverage loan policies shall be issued to approved applicants and shall be:

1.       Written only upon payment of the extended coverage loan surcharge, minimum $60.00.

2.       Issued simultaneously with an Owners Policy at the owner's rate plus $75.00 plus extended coverage loan surcharge.

The charges do not include the cost of any survey that may be required.  The charge includes an inspection charge unless the property is more than three (3) miles from the office or subsequent inspections are made in which case an additional charge may be made.

Rm-24

(4/03)  IDAHQ