**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | | |
|---|---|---|
| DEBORAH LEWIS, on behalf of herself and a class of all others similarly situated, | ) ) ) | Case No. CV 06-478-S-ELJ-LMB |
| Plaintiff, | ) ) | **REPORT AND RECOMMENDATION** |
| v. | ) ) | Re: Docket No. 50 |
| FIRST AMERICAN TITLE INSURANCE COMPANY, a foreign corporation, | ) ) ) | **ORDER** |
| Defendant. | ) ) | Re: Docket No. 59 |

Currently pending before the Court is: (1) Plaintiff's Motion to Certify Class (Docket No. 50); and (2) Defendant's Motion to Strike Plaintiff's Evidence Submitted in Support of Class Certification (Docket No. 59).  Plaintiff seeks certification of a class of all persons who defendant First American Title Insurance Company allegedly overcharged for residential title insurance policies purchased in the states of Arizona, Idaho, New Mexico, Oregon, and Washington.  Having carefully reviewed the record, considered oral arguments, studied the voluminous briefs of the parties and otherwise being fully advised, the Court enters the following Report and Recommendation, and Order.

**REPORT AND RECOMMENDATION AND ORDER - 1 -**

## I.  INTRODUCTION

Defendant First American Title Insurance Company is a nationwide underwriter of title insurance policies operating through a network of direct offices and independent agents. *Defendant's Opposition to Plaintiff's Motion for Class Certification and Memorandum in Support Thereof filed August 4, 2008*, p. 2 (Docket No. 53) [hereinafter *Defendant's Brief*]. Plaintiff Deborah Lewis, in February of 2004, executed a mortgage and an original policy of title insurance on a residential property in Nampa, Idaho. *Amended Complaint*, p. 10 (Docket No. 7). Subsequently, in November of 2005, Plaintiff refinanced that mortgage. *Id.* In refinancing, Plaintiff was required to purchase a policy of title insurance for the new mortgage lender. *Id.* Accordingly, in connection with the refinance, Plaintiff paid Defendant a premium for the purchase of a title insurance policy for the lender. *Id.*

Plaintiff asserts that, in violation of Idaho Code §§ 41-2705–2707, Defendant improperly overcharged Plaintiff in her purchase of the title insurance policy associated with the refinanced mortgage. *Id.* Further, Plaintiff argues that Defendant has violated similar title insurance premium statutes in Arizona, New Mexico, Oregon and Washington by knowingly and/or negligently charging an untold number of similarly situated customers more than allowed under the state laws. *Id.* at 14–15.

Defendant denies these allegations. Moreover, Defendant argues that Plaintiff has failed to meet her burden of showing that this action should be class certified. *See generally Defendant's Brief* (Docket No. 53). Further, Defendant moves to strike portions of two declarations Plaintiff offered in support of her class certification efforts. *See generally*,

**REPORT AND RECOMMENDATION AND ORDER - 2 -**

*Defendant's Motion to Strike Plaintiff's Evidence Submitted in Support of Class Certification Filed on August 4, 2008* (Docket No. 59) [hereinafter *Motion to Strike*].

## II. BACKGROUND

Title insurance is an inherent aspect of virtually every mortgage loan and refinance transaction. Generally speaking, "[a] policy of title insurance [is] a contract which, in exchange for a one-time premium payment, insures [a lender] against actual loss resulting from defects, liens or encumbrances against title existing as of the date the policy goes into effect . . . ." Richard R. Powell, Powell on Real Property § 92.01 (Michael A. Wolf ed., Matthew Bender 2008) (1949). Title insurance is a contract for indemnity. *Id*. at [1]. Likewise, it "is designed to [render] the insured harmless from any loss through defects, liens or encumbrances that may affect or burden [clear title]." *Id*. at [4].

There are two types of title insurance policies: (1) owner's policies, and (2) lender's policies. *Id*. at [2]. An owner's policy is purchased by the borrower/homeowner for the purpose of providing protection to his or her own property interest. *Id*. at [3]. A lender's policy, on the other hand, is purchased for the benefit of the lender/mortgagee providing protection to the lender's security interest in the property. *Id*. at [2]. A lender's policy is typically paid for by the homeowner or the party refinancing, and is usually rolled into that party's mortgage agreement. *See id*. An owner's policy remains in effect as long as that particular homeowner owns the home; a lender's policy remains in effect until the associated mortgage has been satisfied. *Id*. at [3]. In this action, Plaintiff raises issues dealing with lender's insurance policies. *Amended Complaint*, p. 6 (Docket No. 7).

**REPORT AND RECOMMENDATION AND ORDER - 3 -**

Lenders provide the financial means for borrowers to purchase real property.  Loosely speaking, a mortgage occurs when a lender takes a security interest in a borrower's real property. *See* Powell on Real Property § 37.03.  Often, lenders "allow borrowers to refinance to obtain a more favorable interest rate or to spread the loan out over a longer term.  Refinancing [usually] results in a lower payment that may be more manageable for the borrower." *Id.* at 8:P7.01[1]. Generally, lenders on a refinanced mortgage will still require coverage under a title insurance policy, despite the fact that the mortgagee holds a title insurance policy purchased by the same mortgagor under the original mortgage.  *See id.* at § 92.14[5].  However, because the possibility of a defect in title is much diminished under a refinanced mortgage, title insurers often choose to give, and some states require, a discounted rate for policies on subsequent mortgages.  *See, e.g., Mitchell-Tracey, et al. v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 554 (D. Md. 2006).

Arizona, Idaho, New Mexico, Oregon and Washington all regulate title insurers and have enacted statutory schemes to govern various aspects of title insurance in their state.[1]  Relevant to this action, each state further requires that all title insurers submit, for approval, rate schedules that define how much a title insurer can charge customers, as well as the basis for that rate.  *See State Statutes*.  Generally, each state's code requires that all title insurers doing business in that state not deviate from the rates or premiums filed within the state.  *See id*.  Plaintiff correctly notes that "[i]n New Mexico, insurance regulators themselves publish a single rate which governs premium amounts for all insurers." *Plaintiff's Motion for Class Certification*, p. 4

---

[1] *See generally* Ariz. Revised Statute Title 20, Idaho Code Title 41, N.M. Statute Chapters 59–59A, Or. Revised Statute Title 56, & Revised Code of Wash. Title 48 [hereinafter *State Statutes*].

**REPORT AND RECOMMENDATION AND ORDER - 4 -**

(Docket No. 50).  In Arizona, Idaho, Oregon and Washington, Defendant has filed rate
schedules, as required, with the proper office in each state.  *Defendant's Brief*, p. 2 (Docket No.
53).

By way of summary, all five states have regulations that generally require title insurance
companies to assign a discounted premium rate to customers who are reorganizing their
mortgage.  While the actual discount rate and the requisite conditions to qualify that rate differ
from state to state, the underlying concept of the state laws are the same: a mortgagor who is
refinancing their loan agreement should generally be afforded a lower title insurance premium
rate if they so qualify under the published rate manual.

In Arizona, a revamping/refinancing rate ("discount rate") applies to all policies[2] issued
to a lender who is revamping or refinancing a previously insured loan with the same borrower on
the same property within the prior five year period or on a policy where the property was insured
by the owner within the previous five years.  *See* Defendant's Arizona Filings, attached as Ex. 5
to Declaration of Benjamin Schawartzman in Supp. of Mot. for Class Cert. (Docket No. 50-4).
Generally, the discount rate premium, on standard or extended coverage, is 65% of the basic
insurance rate.[3]  Further, the rate manual conspicuously notes that "*[t]he use of this Section shall
be at the sole discretion of management if the original loan was not insured by [Defendant].*"
*Id.* (emphasis in original).

---

[2]  Except those in Maricopa County, where the discounted rate applies only to "vacant or
improved parcel[s], which is or will be used for a one to four family residence, condominium,
townhouse or other similar property."  *Id.*

[3]  In Coconino, Grahm, Greenlee, La Paz and Mojave Counties the discounted premium
rate is 50%.  *Id.*  In Pima County, an extended coverage rate premium schedule is listed.  *Id.*

**REPORT AND RECOMMENDATION AND ORDER - 5 -**

In Idaho, a 50% discount is available when a title policy was issued within the prior two years on the same property by the same owner.  *Id*. at Idaho Rate Manual, ex. 4.  The rate manual requires that the prior policy or a copy of that policy be presented to the Defendant for the reissue rate ("discount rate") to apply.  *Id*.  Notably, the rate manual states further that the Defendant shall retain a copy of any previously issued policies.  *Id*.  Thus, the discount rate in Idaho is apparently available to all those who previously purchased policies from Defendant or to those who present reasonable proof of a prior policy within two years of the original policy.

In Oregon, two rate manuals are relevant to the immediate action.  "From 1986 through April 3, 2006, [Defendant] filed its own rate manual with the [State of Oregon] . . . ."  *See Declaration of Alan Brickley* (Docket No. 53-5).  Subsequently, Defendant joined the Oregon Title Insurance Rating Organization ("OTIRO"), which files a general rate manual for all member groups.  *Id*.  Under both rate manuals, a short term rate ("discount rate") is available for "Owner's, Purchaser's, Leasehold or Lender's Policies] . . . covering the same property within three years from the effective date of the first policy issued."  *See id*.  Prior to April 3, 2006, the discount rate was set at 80% of the standard rate; following Defendants joining the OTIRO, the discount rate was increased to 75% of the standard rate.  *Id*.

In Washington State, rate manuals generally differ from county to county.  *See Declaration of Michael Moore* (Docket No. 53-6).  Defendant notes that during the time in question, as many as seventeen rate manuals were filed with the Washington State Insurance Commissioner.  *Id*.  Defendant explains that the various manuals cover different counties in the state as well as conditions that must be met in order to meet the requirements for a Mortgage Reorganization and/or Junior Mortgage Rate ("discount rate").  *Id*.  Defendant further explains

**REPORT AND RECOMMENDATION AND ORDER - 6 -**

that "[a]s of December 10, 2007, these seventeen manuals have been reduced to five different rate structures."

While the requirements to qualify for a discount rate throughout Washington vary, the basic structure of Defendant's discount rate is by and large uniform:  A 50% discount off of the standard rate is to be given on the same property, with many counties further requiring that the new deed of trust be executed by the same borrower, and some excluding rate discounts related to loans above a set amount.

Finally, in New Mexico, title insurance rates are set by the State Department of Insurance. Title companies operating in New Mexico are bound by the rates set by the State.  N.M. Admin. Code 13.14.1–20.  N.M. Admin. Code 13.14.9.39 provides a sliding scale of substitution rates for use on refinance mortgage loan transactions ("discount rate").[4]  Under New Mexico law, the rate listing "appl[ies] to all policies of title insurance issued on New Mexico properties . . . ."  *Id.*

Plaintiff, on her own behalf, claims that Defendant overcharged her by at least $364.00 in a mortgage refinance transaction by charging the full basic insurance rate rather than the discount rate required by the published manual.  *See Motion to Certify Class*, pp. 12–13 (Docket No. 50).  Further, Plaintiff alleges that Defendant may have "perpetrated more that 367,418

---

[4]  The New Mexico discount rate is as follows:  40% of the basic premium for refinancing an existing loan within two years; 45% of the basic premium for refinancing of an existing loan within three years, but not less than two years; 50% of the basic premium for refinancing of an existing loan within four years, but not less than three years; and 55% of the basic premium for refinancing of an existing loan within five years, but not less than four years. If the refinance takes place five years after the original loan, no discount rate applies.  *Id.*

**REPORT AND RECOMMENDATION AND ORDER - 7 -**

premium overcharges"[5] in a substantially similar way on similarly situated potential class

members in Arizona, Idaho, New Mexico, Oregon and Washington State.  *Id.*

## III.  CLASS DESCRIPTION

### A.        Class Definition

Plaintiff seeks certification of a class defined as follows:

> Persons in the states of New Mexico, Arizona, Washington, Idaho and Oregon who,
> in connection with a mortgage refinancing, paid a title insurance premium for a First
> American Title Insurance Co. title insurance policy, the amount of which exceeded
> the rate on file in those states and/or excluded a lower, refinance rate for which such
> person qualified.

*Id.* at p. 10.  Plaintiff contends that the members of this class are similarly situated to her and

"easily satisf[y] the requirements of Fed. R. Civ. P. 23."  *Id.*  Defendant argues that Plaintiff's

class definition is defective, because it is a "fail safe" class that impermissibly determines

membership based upon a determination of liability.  At oral arguments, Plaintiff conceded this

point and suggested amending Plaintiff's proposed class definition.  Accordingly, the court

amends Plaintiff's proposed class definition to read as follows:

> All persons in the states of New Mexico, Arizona, Washington, Idaho and Oregon
> who, in connection with a mortgage refinancing transaction: (a) paid a premium for
> the purchase of residential title insurance from First American Title Ins. Co.; (b) had
> either an unsatisfied mortgage from an institutional lender or a deed to a bona fide
> purchaser in the chain of title within the state's listed time discount window of the
> payment of the premium provided in the Title Insurance Rate manual in that state;
> and (c) did not receive the discount specified in the Manual.

---

[5]  This estimate excludes potential class members in the State of Oregon because,
according to Plaintiff, Defendant has objected to a discovery request relating to policy number
data.  Accordingly, the undersigned takes notice that information of Defendant's practice in
Oregon has not been made available to Plaintiff.

**REPORT AND RECOMMENDATION AND ORDER - 8 -**

This change overcomes the "fail safe" issue and ensures that class members are bound by the determination of liability.

### B.  Class Claims

Defendant's prior two motions to dismiss (Docket No. 27) were granted in part and denied in part, and the parties stipulated to the voluntary dismissal of Plaintiff Quinn Woodard. (Docket No. 30).  Plaintiff seeks class certification on only two of the remaining claims, including the claim for declaratory and injunctive relief, and for unjust enrichment.

### 1.  Declaratory and Injunctive Relief

Pursuant to 28 U.S.C. § 2201, on behalf of herself and similarly situated class members, Plaintiff seeks class certification on a claim for declaratory relief.  Plaintiff seeks an Order declaring that:

> (i) [Plaintiffs] are qualified for lower reissue rates in connection [sic] refinance transactions; (ii) [D]efendant was obligated to inform [Plaintiffs] of this fact and give them such lower reissue rates; (iii) [D]efendant violated the laws of Idaho, Washington, Oregon, New Mexico and Arizona by failing to give [P]laintiff[] and the class members that they qualified for such discount rates; [(iv)] the amount and classification (i.e., "standard" / "lenders's" policy) of their title insurance coverage mandated that they received a lower premium price than that which they actually received; [(v) D]efendant was obligated to inform them of this fact and give them such lower price; [and (vi) D]efendant violated the laws of Idaho, Washington, Oregon, New Mexico and Arizona by failing to give [Plaintiff[] and the Class members the lower premiums which correspond to their amount and classification of coverage, and by failing to inform [Plaintiff] and the Class members that they qualified for such lower premiums.

*Amended Class Complaint*, p. 12–13 (Docket No. 7).  With regard to injunctive relief, Plaintiff seeks:

> a permanent injunction requiring defendant to notify in writing all owners of residential real estate who, in the context of a refinance transaction, pay premiums for the purchase of title insurance from defendant of: (1) the conditions upon which they

**REPORT AND RECOMMENDATION AND ORDER - 9 -**

may qualify for a reissue rate, and the reduced amount of that rate; [and] (2) the exact price of the official rate scheduled premium for a "lenders's" title policy which corresponds the coverage being written.

*Id*. at p. 14.

### 2.    Unjust Enrichment

Plaintiff also seeks class certification on a claim of unjust enrichment. Specifically, Plaintiff claims through Defendant's conduct, "Defendant has been unjustly enriched at the expense of [Plaintiff] and the Class members." *Id*. at p. 17. Plaintiff estimates damages in excess of $73,000,000.00. *Motion to Certify Class*, pp. 12–13 (Docket No. 50).

## IV. MOTION TO STRIKE

Defendant moves to strike two pieces of evidence submitted by Plaintiff in support of class certification. *Motion to Strike* (Docket No. 59). Specifically, Defendant requests that "(1) a "summary" of an unexplained review of 112 HUD-1 settlement statements [Plaintiff] subpoenaed from three [of Defendant's] Oregon agents; and (2) . . . expert testimony related to a review of 18 HUD-1 [statements] from Idaho, Washington, Oregon, New Mexico and Arizona be stricken from the record and not be considered in support of class certification. *Id*. Plaintiff uses the evidence, apparently, to show the actual existence of a class and to support the Rule 23(a) requirement of numerosity. Plaintiff further uses the HUD-1s to illustrate the ease at which class members could be identify. Defendant contends that the evidence is "unreliable and incompetent and lack[s] any foundation." *Id*.

According to Defendant, only *admissible* evidence may be considered for the purpose of certifying a class. *Memo. in Supp. Of Motion to Strike*, p. 2 (Docket No 59–60), *citing* Fed. R. Evid., 101, 1101; *Dukes v. Wal-mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007); *Vasey v.*

**REPORT AND RECOMMENDATION AND ORDER - 10 -**

*Martin Marietta Corp.*, 29 F.3d 1460 (10th Cir. 1994); *Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928 (7th Cir. 1989); *see also, Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862 (S.D. Ohio 2005); *Richards v. Computer Sciences Corp.*, 2004 WL 2211691 (D. Conn. Sept. 28, 2004); *McElmurry v. U.S. Bank Nat'l Ass'n*, 2004 WL 1675925 (D. Or. July 27, 2004); *Clark v. Dollar Gen. Corp.*, 2001 WL 878887 (M.D. Tenn. May 23, 2001); *Sjoblom v. Charter Commc'ns, LLC*, 2007 WL 4560541 (W.D. Wis. Dec. 19, 2007); *Threatt v. Residential CRF, Inc.*, 2005 WL 4631399 (N.D. Ind. Aug. 31, 2005).

Plaintiff disagrees, citing contrary authority.  *See Opposition to Motion to Strike* (Docket No. 61), *citing Disability Right Council of Greater Washington v. Washington Metro. Area Transit Auth.*, 239 F.R.D. 9 (D. D.C. 2006); *Bell v. Aldus Healthcare, Inc.*, 2007 WL 3012507 (W.D. Wash 2007); *Tedrow v. Cowles*, 2007 WL 2688276 (S.D. Ohio 2007); *Thompson v. Board of Educ. Of Romeo Community Sch.*, 71 F.R.D. 398 (W.D. Mich 1976); *Bacon v. Honda of Am. Mfg.*, 205 F.R.D. 466 (S.D. Ohio 2001).

Case law exists to support both positions.  Further, "the issue has not been squarely addressed by the Ninth Circuit." *Parkinson v. Hyundai Motor America*, 2008 WL 5233200, *19 (C.D. Cal. 2008).  Because a motion for class certification is not dispositive, the admissibility of evidence under the Rules is less relevant at this stage.  *See id.*  However,

> the Court should not abandon admissibility standards entirely at the certification stage.  For example, when expert reports are cited in support or opposition of certification, the Court need not engage in a full *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), analysis; however, the Court should conduct a limited inquiry into the reliability of the expert opinion and its relevance to determining a Rule 23 requirement. *See Dukes*, 509 F.3d at 1179–80.

**REPORT AND RECOMMENDATION AND ORDER - 11 -**

*Id.*  Given the stage in the proceedings and the applicable evidentiary standard, Defendant's motion to strike is denied without prejudice.  Plaintiff's evidence will be considered only for the purpose of class certification.  Notably, Defendant's evidentiary objections may be appropriately asserted, again, prior to trial in a motion in limine or during trial.

## IV.  CERTIFICATION ANALYSIS

### A.      Class Certification:  The Standard

Under Federal Rule of Civil Procedure 23,  the Court has broad discretion to determine whether a class should be certified.  *Dukes v. Wal-mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007).  Initially, there are two implicit prerequisites that must be satisfied for a grant of class certification.  *Lyell v. Farmers Group Inc. Employees' Pension Plan*, No. CV-07-1576, 2008 WL 5111113, at *3 (D. Ariz. Dec. 3, 2008).  First, in order to assert a class action, the class must be "adequately defined and clearly ascertainable."  *Id.* (*citing DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970); *see also Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 730 (9th Cir. 2007) ("The district court's failure to analyze the Rule 23(a) factors in determining whether to grant class certification . . . resulted in its certifying a theory with no definable class.").  "The class cannot be overly broad, amorphous, or vague, but must be susceptible to a precise definition."  *Id.*  A class must be precisely defined so the Court can determine "whom effective notice of the pending action can be given and who will be bound by any judgment entered."  *Hilo v. Estate of Marcos*, 103 F.3d 767, 774 (9th Cir. 1996).  Second, the named representative of the class must be a member of the class.  *Bailey v. Patterson*, 369 U.S. 31, 32–33 (1962).  Notably, "[t]he Ninth Circuit . . . dovetails the class membership prerequisite with the typicality requirement of Rule 23(a)."  *Lyell*, 2008 WL at *3.  In other words, among other things

**REPORT AND RECOMMENDATION AND ORDER - 12 -**

"[t]ypicality requires that the named plaintiff[ be a member] of the class they represent." *Dukes*,

509 F.3d at 1184.

Further, Rule 23(a) requires that the party seeking class certification establish that the

proposed class satisfy the following four requirements:  (1) numerosity;  (2) commonality;  (3)

typicality;  and (4) adequacy of representation.  Fed. R. Civ. P. 23(a).  Finally, Plaintiff must

show that at least one of the factors listed in Rule 23(b) is present.  *Id.*

With respect to the injunctive and declaratory relief sought, Plaintiff is proceeding under

Rule 23(b)(2), and thus must show that Defendant's "conduct or refusal to act was generally

applicable to the [entire] class and that final injunctive or declaratory relief with respect to the

entire class would be the appropriate remedy."  *Id.*  Regarding the claim for unjust enrichment,

Plaintiff is moving for class certification pursuant to Rule 23(b)(3).  *Motion for Class

Certification*, p. 14–19 (Docket No. 50).  Under Rule 23(b)(3) a class action may be maintained

if:

> the court finds that the questions of law or fact common to class members
> predominate over any questions affecting only individual members and that a class
> action is superior to other available methods for fairly and efficiently adjudicating the
> controversy.

Fed. R. Civ. P. 23(b)(3).  In other words, "the Court must determine whether common questions

predominate over individual questions, and decide whether a class action is the superior means

of adjudicating th[e] case."  *Rowe v. E.I. DuPont de Nemours and Co.*  No. CV-06-1810, 2008

WL 5412912, at *20 (D. N.J. Dec. 23, 2008).

When reviewing a motion for class certification, the court generally takes substantive

allegations made in the complaint as true.  *In re Coordinated Pretrial Proceedings in Petroleum*

**REPORT AND RECOMMENDATION AND ORDER - 13 -**

*Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir.1982) (*citing Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir .1975)).  Notwithstanding, the court may look beyond the pleadings to ascertain whether all the requirements of Rule 23 have been met.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir.1992).  In fact, "courts are not only at liberty to but must consider evidence which goes to the requirements of Rule 23, even [if] the evidence may also relate to the underlying merits of the case."  *Dukes*, 509 F.3d at 1178 n. 2 (internal quotations and citation omitted).  Finally, if later evidence clouds certification, the court may always revisit the issue to modify or decertify any involved class.  *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982).

### B.     Requirements under Rule 23(a)

#### 1.     Adequately Defined and Ascertainable Class

Initially, beyond the listed prerequisites of Rule 23, there are two implied requirements that must be met.  First, "an identifiable class must exist;" and second, "the named representatives [must be] members of the class."  *See Fournigault v. Independence One Mort. Corp.*, 234 F.R.D. 641, 644 (N.D. Ill. 2006).  "It is axiomatic that for a class action to be certified a 'class' must exist."  *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981).  Likewise, a class that is "amorphously defined" (*Berman v. Narragansett Racing Ass'n*, 414 F.2d 311, 317 (1st Cir. 1969)), "overly-broad" (*Tefel v. Reno*, 180 F.3d 1286, 1304 (11th Cir. 1999)) or "vague" (*Ihrke v. N. States Power Co.*, 459 F.2d 566, 572 (8th Cir. 1972)) should not be certified.  *Simer*, 661 F.2d at 669.  Finally, the Manual for Complex Litigation explains that

> An identifiable class exists if its members can be ascertained by reference to objective criteria.  The order defining the class should avoid . . . terms that depend on resolution of the merits (e.g., persons who were discriminated against).

Manual for Complex Litigation (Fourth), § 21.222 (2004).

As noted above, Plaintiff seeks class certification over similarly situated class members over five states who, in connection with a mortgage refinance transaction, paid a title insurance premium to Defendant in excess of the amount called for in the published rate manual of that state. *Motion for Class Certification*, p. 10 (Docket No. 50).  Under this definition, the class is ascertainable, clear and definite.  The class members can be discovered through objective criteria. Further, based on her own transaction with Defendant, it is clear that Plaintiff is a member of the class.  Likewise, the undersigned finds that the class definition is adequate.

### 2.    Numerosity

The prerequisite of numerosity is satisfied if "the class is so large that joinder of all members is impracticable."  Fed.R.Civ.P. 23(a)(1).  Defendant contends that, in light of *Woodard v. Fidelity National Title Insurance Co.*, No. CV-06-1170, slip op. (D. N.M. Dec. 8, 2008), Plaintiff has failed to demonstrate numerosity.  At oral argument, Defendant asserted that *Woodard* is dispositive and that Plaintiff fails to meet numberosity in the same vein as *Woodard*, as a matter of law.

The New Mexico Court in *Woodard* provided that because the plaintiff "failed to provide any evidence that could reasonably demonstrate the class he proposes is 'so numerous that joinder of all members is impracticable,'" numerosity is not met. *Id*. at 15.  The New Mexico court states that "Plaintiff merely assert[ed] his 'belief' that 'the class is comprised of thousands of individuals.'" The New Mexico court concludes that numerosity is, thus, not met because

**REPORT AND RECOMMENDATION AND ORDER - 15 -**

"unsubstantiated assertions and speculative beliefs . . . are insufficient to demonstrate numerosity . . .." *Id.*

While it is true that the numerosity determination may not be based on mere speculation, neither is it true that Plaintiff need to allege the exact number or identity of all class members. *See Arnold v. United Artists Theater Circuit, Inc.*, 158 F.R.D. 439 (N.D. Cal. 1994); *Freedman v. Louisiana-Pac. Corp.*, 922 F.Supp. 377, 398 (D.Or.1996); 7 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1762 (3d ed.1995).

Plaintiff has submitted evidence, based on a review of several HUD-1 statements, that there are likely thousands of potential class members in the five-state class.[6]  Plaintiff also submits that based on the large number of people who are have title insurance policies with Defendant and the number of people who have been involved in a refinance transaction, it is axiomatic that a class of thousands of similarly situated plaintiffs exist.  *See Motion to Certify Class*, p. 10–11 (Docket No. 50) (indicating that the putative class may number in excess of 360,000).  Defendant responds that Plaintiff has not met her burden on this element: that they have not presented any admissible evidence of the number of individuals who have been overcharged by Defendant.  However, Defendant seeks to impose here a level of specificity not required by Rule 23(a).  Finally, it is persuasive that other Courts have certified classes like the one proposed here based on similar or lesser evidentiary showings.  *See, e.g., Randleman v. Fidelity National Title Ins. Co.*, 251 F.R.D. 267 (N.D. Ohio 2008); *Cohen v. Chicago Title Co.*,

---

[6]  In light of Defendant's motion to strike (Docket No. 59), the undersigned considers this evidence with a certain degree of skepticism.  However, as noted above, because of the early stage of the proceedings and the general lack of discovery, at this point, Plaintiff's evidence is sufficient.

**REPORT AND RECOMMENDATION AND ORDER - 16 -**

242 F.R.D. 295 (E.D. Pa. 2007); *Mitchell-Tracey v. United Gen. Title Ins. Co. & First Am. Title Ins. Co.*, 237 F.R.D. 551 (D. Md. 2006); *Alberton v. Commonwealth Land Title Ins. Co.*, 247 F.R.D. 469 (E.D. Pa. 2008).  According to Plaintiff, "the operative Class is comprised of far more than 360,000 homeowners, located throughout a five state region of Idaho, Oregon, Washington, Arizona and New Mexico.  This number of class members is sufficient to satisfy the numerosity requirement of Rule 23(a).

### 3.    Commonality

A class has sufficient commonality if "there are questions of fact and law common to the class."  Fed.R.Civ.P. 23(a)(2).  The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1015 (9th Cir. 1998); *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).  In fact, in this Circuit, Rule 23(a)(2) is construed "permissively."  *See id.*  Likewise, all questions of fact and law need not be common to satisfy the rule.  *Id.*  In other words, to establish commonality under Rule 23(a)(2), "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies."  *Hanson*, 150 F.3d at 1019.  "The test or standard for meeting the Rule 23(a)(2) prerequisite [of commonality] is qualitative rather than quantitative; that is, there need be only a single issue common to all members of the class."  Newburg on Class Actions § 3:10.

"Rule 23 does not require that the representative plaintiff have endured precisely the same injuries that have been sustained by the class members, only that the harm complained of be common to the class, and that the named plaintiff demonstrate a personal interest or 'threat of

injury . . . [that] is "real and immediate," not "conjectural" or "hypothetical.'" *Bassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988) (*quoting O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

Here, Plaintiff's complaint alleges a single scheme that affected each member of the class by impermissibly charging class members a standard premium rate, when a discount rate should have been assessed.  Plaintiff's claim is about Defendant's systemic policies as applied to all customers, not specific circumstances unique to any single customer.  This establishes commonality under the permissive standard of Rule 23(a)(2).

### 4.  Typicality

As the Supreme Court explained,

> The commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*General Telephone v. Falcon*, 457 U.S. 147 at 157, n.13 (1982).  The previous prerequisites of Rule 23 focused on the characteristics of the class.   *Rules Advisory Committee Notes*, 39 Federal Rule Decisions 69, 100 (1966).  Typicality and adequacy of representation, however, focus on the characteristics of the individual class representatives.  *Id*.  In that respect, typicality also overlaps with the adequacy of representation requirement under Rule 23(a)(4).

The typicality prerequisite of Rule 23(a)(3) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  *Gen. Tel. Co. Of the Northwest, Inc. v. EEOC*, 446 U.S. 318 (1980).  "The typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiffs' claims."  *Id*.  The typicality prerequisite "emphasizes that the [class] representatives ought to be squarely aligned in interests

**REPORT AND RECOMMENDATION AND ORDER - 18 -**

with the represented group." Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure*, 81 Harv. L. Rev. 356, 387 n. 120 (1967). "The test of typicality is whether other members have the same or similar injury whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct." *Hannon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, Plaintiff argues that her claim and the general claim of the class members are the same; all class members allege that they are victims of Defendant's failure to adhere to the applicable price manual, and thus Defendant overcharged all the class members in their refinance transactions. Defendant counters, however, that because each class member's ability to qualify for the discount rate "var[ies] from state to state and transaction to transaction," typicality is not present. Defendant's argument raises the potential of certifying a class consisting only of Idaho plaintiffs should typicality not be found due to the variations in state law, though Defendant objects to class certification in Idaho as well.

Plaintiff can satisfy her burden of showing typicality through pleadings, affidavits or through evidence presented in a class certification hearing. Here, Plaintiff has presented, among other things, various reports, copies of relevant state statutes, interrogatories, deposition transcripts, a declaration of Plaintiff, a sample of HUD-1 forms from absent class member states,

**REPORT AND RECOMMENDATION AND ORDER - 19 -**

and Plaintiff's HUD-1 form.[7]  Plaintiff has presented sufficient evidence to make her allegations
of typicality clear.

    Plaintiff alleges to have been adversely affected by the same policies, practices and
procedures as the absent class members.  Plaintiff asserts injuries in the same general manner as
would all other class members.  Plaintiff further points out that this proposed class definition is
qualitatively identical to several other class actions that have been granted certification.
Notably, however, Plaintiff cannot point to a multi-state class that has been certified under a
similar claim.

    After carefully considering all fo the foregoing, the briefs of the parties, the evidence on
record, and oral arguments of counsel, the undersigned finds, and thus concludes, that the multi-
state nature of the proposed class makes the putative class unsuitable for certification.  While
Plaintiff's alleged harm is factually similar to those alleged harms of the putative class, the
undersigned finds, and thus concludes, that there are materially different legal standards of
liability among the five jurisdictions that make Plaintiff's claims atypical of those same claims of
class members in other states.  For instance, Plaintiff's legal claims would be evaluated under
different legal standards than putative class members outside Idaho.  The varying standards and
law existing over the five class states seriously impairs Plaintiff's ability to present generalized
proof in support of the claims of all of the putative class members.  Accordingly, Plaintiff's

_____

    [7]  Defendant has filed a motion to strike Plaintiff's summary of 112 HUD-1 settlement
statements and a related review of 18 HUD-1 forms from Idaho, Washington, Oregon, New
Mexico and Arizona.  *Defendant's Motion to Strike Evidence*, p. 2 (Docket No. 59).  For reasons
set forth above, Defendant's Motion to Strike Evidence is denied.  *See infra* section IV.

**REPORT AND RECOMMENDATION AND ORDER - 20 -**

claims are not typical of the claims of the putative class existing outside Idaho.  *See General Tele. Co. Of Southwest*, 457 U.S. at 158.

>   However, pursuant to Rule 23(c)(4),
>
>   [w]hen appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) *a class may be divided into subclasses and each subclass treated as a class* and the provisions of this rule shall be construed and applied accordingly.

Fed. R. Civ. P. 23(c)(4) (emphasis added).  Consequently, the Court may redefine a proposed class in such a way as to meet class action requirements.  Newburg on Class Actions, § 7:33 n. 8 *(citing Slaughter v. Levine*, 485 U.S. 415 (1988)).  Because this case involves a challenge to the allegedly common policies, practices and procedures which are said to have similarly caused all putative class members to be overcharged for a title insurance premium from Defendant, differences concerning the varied conditions needed to qualify for a discount rate solely in the state of Idaho is of no consequence.  Put another way, like Plaintiff, each Idaho class member would contend a loss as a result of Defendant's alleged failure to adhere to Idaho published rate manual and each Idaho class member would pursue the same interest in general damages and a modification in the challenged practices.  Accordingly, with regard to a subclass of Idaho plaintiffs only, the typicality standard has been met.

### 5.     Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  Fed.R.Civ.P. 23(a)(4).  To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them.  *Hanlon*, 150 F.3d at 1020.  Resolution of two questions

**REPORT AND RECOMMENDATION AND ORDER - 21 -**

determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978).

Defendant has not raised any conflicts of interest, and does not assert that counsel for the named plaintiff will not vigorously prosecute the case.  However, Defendant does argue that Plaintiff's claims are "subject to a unique defense," and that Plaintiff lacks sufficient knowledge, understanding and control over defense counsel to serve as an adequate representative of the class. *Defendant's Opposition to Class Certification*, pp. 26–29 (Docket No. 53).  With regard to the unique defense, Defendant argues that, unlike customers in the other four states under consideration, because Defendant's customers in Idaho must present evidence of an earlier policy to qualify for a discounted refinance rate, Plaintiff and Idaho class members are subject to a unique defense. *Id.*

"It is well established that when a putative representative may be subject to unique defenses, the representative cannot establish typicality and class certification must be denied." Joseph M. McLaughlin, McLaughlin on Class Actions, § 4:18 (3d ed. 2008).  "A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3rd Cir. 2006).  When the class representative is subject to unique defenses, "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *In re WorldCom Inc.*, 358 B.R. 585, 603 (S.D. N.Y. 2006) (*quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.

**REPORT AND RECOMMENDATION AND ORDER - 22 -**

1990)).  "The mere fact that a putative class representative, whose claims arise from the same course of events and are based upon the same legal theory as the other members of the proposed class, is subject to a unique defense does not render her atypical for purposes of class action certification unless that defense threatens to become the focus of litigation thereby prejudicing the absent class members."  *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250 (D. Mass. 2005).  Finally, Defendant "need not show at the certification stage that the unique defense will prevail, only that it is meritorious enough to require the plaintiff to devote considerable time to rebut the unique defense."  *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D. N.Y. 1989).

Previously, the undersigned found that the typicality requirement was met only by the sub-class of Idaho plaintiffs.  As such, the unique defense argument proffered by Defendant is moot.  Accordingly, Plaintiff is not inadequate because of any unique defense.

Defendant also asserts that Plaintiff Lewis is wholly inadequate to serve as the class representative because she is "ignorant of the nature of the action, the facts alleged and the theories of relief against the defendant."  *Defendant's Opposition to Class Certification*, p. 27–28 (Docket No. 53) (*quoting Bodner v. Oreck Direct*, LLC, No. C 06-4756-MHP, 2007 WL 1223777, *2 (N.D. Cal. April 25 2007)).  Specifically, Defendant argues that Lewis is inadequate for four reasons: (1) she has no involvement in the case; (2) she has no control over the case; (3) she has no understanding of the underlying action; and (4) she lacks the basic knowledge of the underlying facts and theories of relief.  *Defendant's Opposition to Class Certification*, p. 28 (Docket No. 53).  In other words, Defendant is asserting that because of Plaintiff Lewis's

**REPORT AND RECOMMENDATION AND ORDER - 23 -**

ignorance, she would be unable to aid her attorneys, and the suit is, in reality, her lawyer's lawsuit.

This issue has been addressed, and largely settled, by the Supreme Court:

The basic purpose of the Federal Rules is to administer justice though fair trials, not through summary dismissals as necessary as they may be on occasion. These rules were designed in large part to get away from some of the old procedural booby traps, which common-law pleaders could set to prevent unsophisticated litigants from ever having their day in court. If rules of procedure work as they should in an honest and fair judicial system they not only permit, but should as nearly as possible guarantee that bona fid complaints be carried to an adjudication on the merits.

*Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 372–73 (1966). A review of Plaintiff Lewis's deposition reveals that she has an adequate understanding of this litigation, the facts that gave rise to the underlying action and a clear idea of her expectations of resolution. This is sufficient to establish the minimal adequacy of representation requirement. *See Rivera v. Fair Chevrolet Geo Partnership*, 165 F.R.D. 361 (D. Conn. 1996) (Plaintiff automobile buyer was adequate despite the fact that his deposition demonstrated that his understanding of the case was sketchy); *In re Catfish Antitrust Litigation*, 826 F. Supp 1019, 1037–38 (N.D. Miss, 1993) ("This court is aware of the popular criticism and perception of class action litigation as being a lifeline for legal fees rather than a judicially feasible approach to vindicate multiple wrongs. Regardless of whether such criticism is fact or myth, it goes without saying that the client's interest is first and foremost in the advocacy of this case and in every case.").

**C.      Requirements under Rule 23(b)**

**REPORT AND RECOMMENDATION AND ORDER - 24 -**

In addition to meeting the conditions imposed by Rule 23(a), the party seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3). *Hanlon*, 150 F.3d at 1022. In this case, the plaintiff seeks certification pursuant to Rule 23(b)(3) and Rule 23(b)(2).

### 1. Rule 23(b)(2) - Injunctive Relief

Rule 23(b)(2) authorizes class certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). "This rule applies when the putative class seeks injunctive or declaratory relief, and does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." *Cohen v. Chicago Title Ins. Co.*, 242 F.R.D. 295, 300 (E.D. Pa. 2007) (citations omitted).

At oral argument, Plaintiff conceded that her claim was monetary in nature, and withdrew her request for class certification under Rule 23(b)(2).

### 2. Rule 23(b)(3) - Damages Class

Certification under Rule 23(b)(3) is appropriate for Plaintiff's unjust enrichment claim and requires that common questions "predominate over any questions affecting only individual members," and that the class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 608 (1997). In evaluating a proposed Rule 23(b)(3) class, the court must determine if a class action is the best

or fairest way of adjudicating the class claims. Initially, the court must consider what other procedures exist for disposing of the litigation and then evaluate the relevant alternatives to determine if class certification is the most efficient and comprehensive means of managing the controversy.

This analysis presumes the existence of common issues of fact or law; however, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3). *Hanlon*, 150 F.3d at 1022. Rule 23(b)(3) focuses on the relationship between the common and individual issues. *Id*. In other words, Rule 23(b)(3) classes require that "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members . . .." Rule Advisory Committee Notes to 1966 Amendments to Rule 23, 39 Federal Rule Decisions, pp. 69, 102–103. "The predominance test expressly directs the court to make a comparison between the common and individual questions involved in order to reach a determination of such predominance of common questions in a class action context." Newberg § 4:24.

Predominance is determined not by counting the number of common issues, but by weighing their significance. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 627 (5th Cir. 1999). "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir.2004). When examining (b)(3), the court looks to four factors: (1) the interest of individual members of the class in individually controlling the prosecution of the action; (2) the extent of litigation

**REPORT AND RECOMMENDATION AND ORDER - 26 -**

commenced elsewhere by class members; (3) the desirability of concentrating claims in a given forum; and (4) the management difficulties likely to be encountered in pursuing the class action." F. R. Civ. P. 23(b)(3).

Defendant claims that individual issues of liability will predominate over common class issues. *Defendant's Opposition to Class Certification*, p. 29–34 (Docket No. 53).  Accordingly, Defendant argues that maintenance of the class action pursuant to 23(b)(3) is inappropriate because the Plaintiffs' unjust enrichment claims would require individualized inquiries into Defendant's legal and contractual relationship with each class member, and these individual inquiries would predominate over common questions of law and fact.  *Id*

Plaintiff responds that Defendant is misconstruing the law and facts of the underlying claims. *Plaintiff's Reply in Support of Class Certification*, p. 21–22 (Docket No. 63).  Plaintiff contends that "even if individualized file reviews [are] necessary in this case, such circumstances are no bar to certification.  *Id*.  Plaintiff cites a number of single-state class actions that have rejected Defendant's contention that the requirements of 23(b)(3) are not met because of the unwieldy nature of discovery.  *Id*. at 22–23 (*quoting Slapikas*, 250 F.R.D. at 250 ("While it may be true that each file must be reviewed on individually, under plaintiff's theory, this will be a virtually automatic process that looks only at whether the customer received a discounted rate.").

A district court "should not assess any aspect of the merits unrelated to a Rule 23 requirement."  *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).  However, the undersigned "must consider evidence which goes to the requirements of Rule 23 at the class certification stage even if the evidence may also relate to the underlying merits of the case." *Dukes v. Wal-Mart*, 509 F.3d 1168, 1178, n. 2 (9th Cir. 2007).  The Court's analysis of each

**REPORT AND RECOMMENDATION AND ORDER - 27 -**

Rule 23 element must be "rigorous," and a refusal to conduct that examination because it overlaps with the merits "would [be] error." *Id.*

Without commenting on the merits of the case, the undersigned recognizes that there are several legal issues would that best be determined on a class-wide basis. For instance, at the merits stage of the class action, the Court will have to determine what constitutes "evidence of a prior policy" and what is meant by "when evidence of the prior policy is produced." *See Slapikas v. First American Title Ins. Co.*, 250 F.R.D. 232, 244 (W.D. Pa. 2008). Additionally, as in *Slapikas*, "the court would need to determine whether the purchaser has the burden of producing evidence of a prior policy or if information produced as a result of the title examination or during the settlement process satisfies the evidentiary requirements of the Rate Manual." *Id*.

Both parties agree that each potential class member's claim is the same: if the putative member was eligible for the reissue rate but was wrongly charged a higher premium. The potential class shares the common issue of determining Defendant's liability and each member's eligibility for a claim, which predominate over any individual issues. Furthermore, because only class members in Idaho are being considered, the elements of unjust enrichment are the same for each potential class member.

Under Idaho law, "[t]he elements of unjust enrichment are that (1) a benefit is conferred on the defendant by the plaintiff; (2) the defendant appreciates the benefit; and (3) it would be inequitable for the defendant to accept the benefit without payment of the value of the benefit." *Teton Peaks Inv. Co. LLC v. Ohme*, 146 Idaho 394; 195 P.3d 1207, 1211 (2008). "The essence of a quasi contractual obligation lies in the fact that defendant has received a benefit which it

**REPORT AND RECOMMENDATION AND ORDER - 28 -**

would be inequitable for him to retain." *Hixon v. Allphin*, 76 Idaho 327, 333, 281 P.2d 1042, 1045 (1955).

This claim is common to all the putative class members. Any putative class members who were overcharged when they were entitled to a discounted rate would be in exactly the same position. According to Defendant, in Idaho, Defendant follows the same standard procedures, uses the same standard forms, and calculates the applicable rates in exactly the same way for each putative class member. Defendant apparently also interpreted the evidentiary provisions of the Rate Manual in the same way. A determination whether an overcharge by First American is "unjust" is common to all putative class members and appropriate for class treatment.

Finally, the undersigned finds, and thus concludes, that a class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). This determination "necessarily involves [comparing a class resolution with] alternative mechanisms of dispute resolution" such as "individual claims." *Hanlon*, 150 F.3d at 1023. If this action was not certified as a class, each individual plaintiff would have to establish the same elements on an individual basis. This repetitive process would "unnecessarily burden the judiciary." *Id*. Furthermore, "it would be folly to force each to prove the nucleus of the alleged fraud again and again." *In re American Continental Corp./Lincoln Savings & Loan Securities Litig.*, 140 F.R.D. 425, 431 (D. Ariz. 1992). As individuals, much of the putative class would not have the resources to pursue litigation or may not even be aware of their claims against Defendant. Accordingly, a class resolution is superior to the alternatives under Rule 23(b)(3).

## CONCLUSION

**REPORT AND RECOMMENDATION AND ORDER - 29 -**

In summary, the proposed class meets the requirements of subsections (a) and (b)(3) of Rule 23 over putative Idaho class members.  Accordingly, if the District Court adopts these recommendations class certification will be granted as to Plaintiff's unjust enrichment claims against Defendant only in the State of Idaho.

## IV.  RECOMMENDATION

Based upon the FOREGOING, it is hereby RECOMMENDED that the District Court enter an Order consistent with the following:

1.     That Plaintiffs' Motion to Certify Class and to Approve Notice (Docket No. 50) be GRANTED as follows:

     A.   The Court will certify a class defined as:  All persons in the state of Idaho who, in connection with a mortgage refinancing transaction: (a) paid a premium for the purchase of residential title insurance from First American Title Ins. Co.; (b) had either an unsatisfied mortgage from an institutional lender or a deed to a bona fide purchaser in the chain of title within two years of the payment of the premium provided in the Title Insurance Rate manual in Idaho; and (c) did not receive the discount specified in the Manual;

     B.   The Court will deny class certification over all other Plaintiffs;

     B.   The Court will also appoint as lead plaintiff, Deborah Lewis of Nampa, Canyon County, Idaho; and

     C.   The Court will appoint Benjamin A. Schwartzman, of Banducci, Woodard, Schwartzman, PLLC, Paul M. Weiss, of Freed & Weiss, LLC, Richard J. Burke, of Richard J. Burke, LLC, and Carl P. Burke, individually, as class counsel.

**REPORT AND RECOMMENDATION AND ORDER - 30 -**

## V.  ORDER

Based upon the FOREGOING, it is hereby ORDERED that Defendant's Motion to Strike Plaintiff's Evidence Submitted in Support of Class Certification is DENIED WITHOUT PREJUDICE.



DATED:  **March 2, 2009**.

Honorable Larry M. Boyle
United States Magistrate Judge

**REPORT AND RECOMMENDATION AND ORDER - 31 -**