UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEBORAH LEWIS,<br><br>              Plaintiff,<br><br>v.<br><br>FIRST AMERICAN INSURANCE COMPANY,<br><br>              Defendant. | Case No. 1:06-cv-000478-EJL-LMB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in the above entitled matter is Defendant's Objection to the November 15, 2012 Order issued by United States Magistrate Judge Larry M. Boyle (Dkt. 209) denying Defendant's Motion to Decertify Class (Dkt. 188). (Dkts. 210, 232.) Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

For the reasons set forth below, the Court grants Defendant's Motion to Decertify Class (Dkt. 188). The initial justifications underlying the class certification decision have not withstood the test of time. Rather, the Court finds that the transactional nature of the liability inquiry undermines the findings of predominance and commonality necessary to

**MEMORANDUM DECISION AND ORDER - 1**

maintain class certification under Rule 23. In addition, practical limitations on discovery and associated difficulties in ascertaining the class members also reflect that the class action is simply unmanageable.

## PROCEDURAL HISTORY

This Class Action Complaint was originally filed by Plaintiff Deborah Lewis against Defendant First American Title Insurance Company ("First American") on November 28, 2006. (Dkt. 1.) Plaintiff brought the case pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and others similarly situated who she alleges were overcharged for title insurance when refinancing their homes.

Plaintiff, an Idaho resident, claims on her own behalf that Defendant overcharged her by at least $364 in a mortgage refinance transaction. It is undisputed that First American may only charge rates consistent with its filed rate manual. Consistent with the Idaho Rate Manual, a 50% discount rate, the "resissue rate," must be applied when a title policy is issued within two years of a previous title insurance policy on the same property by the same owner. More specifically, the Idaho Rate Manual states that the reissue rate must be applied if either: (1) "[t]he prior policy or a copy thereof is presented to the issuing company and shall be retained in the issuing company's file" or (2) "in the absence thereof, reasonable proof of [prior] insurance is provided to the using company." (Dkt. 53-2, p. 23.)

Initially, Plaintiff sought certification of a five-state class including residential consumers in Idaho, Washington, Oregon, New Mexico, and Arizona. (Dkt. 50). On February 24, 2010, the Court granted class certification but only for residential customers in the State of Idaho. (Dkt. 95.) The Court defined the class as follows:

**MEMORANDUM DECISION AND ORDER - 2**

> All persons in the state of Idaho who, in connection with a mortgage refinancing transaction: (a) paid a premium for the purchase of residential title insurance from First American Title Ins. Co.; (b) had either an unsatisfied mortgage from an institutional lender and prior title policy insurance, or a deed to a bona fide purchaser in the chain of title within two years of the payment of the premium provided in the Title Insurance Rate manual in Idaho; and (c) did not receive the discount specified in the Manual.

(Dkt. 95).

At the class certification stage, First American argued that it did not have the data necessary to identify potential class members in any state including Idaho. (Dkt. 53). In support of this argument, First American submitted affidavits describing the records it maintains specific to title policies it issues directly and through independent agents. As a result of limitations in how this data was collected and stored, First American argued that an unmanageable, file-by-file review of closing documents would be required in order to both ascertain class members and determine liability.

First American uses a computer system referred to as "FAST" to store data on the policies First American issues directly. (Dkt. 53-12). The FAST system contains data on the title policies issued in Idaho and scanned, imaged copies of the title abstract and examination for these transaction, as well as the closing file if First American handled the closing. *Id.* It is not possible to run a query on this system to identify policies issued at a particular rate. *Id.*

Furthermore, before January 2008, First American did not use an electronic database or other computer system to track policies issued in Idaho through independent agents. *Id.* Thus, the information specific to policies issued through independent agents before 2008 had to be obtained directly from the independent agents.

**MEMORANDUM DECISION AND ORDER - 3**

At the class certification stage, the Court determined that: (1) examining each class member's file would be "an almost automatic process" to identify whether the customer had a prior title insurance policy and (2) Defendant must have "the ability to easily collect each class member's title insurance policy." (Dkt 95.) The Court found it "strained credulity" to suggest that the Defendant lacked the ability to compile information on insurance policies it issued- whether they were issued directly or through independent agents. *Id.*

A year following class certification, on May 10, 2011, the Court issued a Case Management Order (Dkt. 125). In this Order, the Court made clear that Plaintiff has "the burden of completing class notice and performing the necessary associated tasks." *Id.* These associated tasks included ascertaining potential class members and developing a proposed class mailing list. *Id.*

In order to identify class members, Plaintiff required discovery from both First American as well as the independent agents that issued First American policies but are non-parties to this litigation. Initially, the close of discovery was set for May 5, 2011. However, that deadline was extended to December 7, 2011.

First American produced the documents and electronic data it had in its possession responsive to Plaintiffs' discovery requests regarding the identification of class members. (Dkt. 188-1, p. 11, Dkt. 210, p. 10).) This included: (1) data from the FAST system for transactions involving First American's direct operations; (2) data from the STARS system for transactions since 2008 involving independent agents; and (3) millions of pages of documents from its electronically stored closing files comprising the over 11,000

**MEMORANDUM DECISION AND ORDER - 4**

transactions reflected in the FAST data. (Dkts. 152 at 6-8; Dkt. 189, Ex. 1.) In contrast, Plaintiff ran into obstacles when seeking to obtain similar documents and electronically stored information from the independent agents. (Dkt. 173.)

On December 21, 2011, Plaintiff submitted a partial proposed list of class members and requested additional time to obtain information regarding policies issued through independent agents. (Dkt. 153.) Because Plaintiff had not been able to obtain information through the independent agents, her proposed list was limited to those policies issued directly through First American; the list did not identify individuals who purchased a policy issued through the independent agents. (Dkt. 152 at 9-11.)

Defendant filed two statements in response to Plaintiff's proposed class list arguing that it was inadequate. (Dkts. 152, 158-171.) Defendant's substantive review of Plaintiff's proposed class list revealed that 91 percent of the transactions on the list did not meet the Court's class definition, because the proposed class members were not entitled to the reissue rate, received it, or received an even larger discount. (Dkt. 158.) Plaintiff filed a response arguing an overly inclusive class list was permissible under the law; Defendant's arguments regarding inaccuracies in the class list were premature arguments on the merits of Plaintiff's case; and to the extent the Court found it appropriate to further refine the proposed class list, Defendant should be required to produce documents in a search-friendly, usable format. (Dkt. 175.)

On April 2, 2012, Plaintiff filed a Motion to Compel the discovery requested from the independent agents. (Dkt. 173.) The motion was opposed by these non-parties. (Dkt. 179.)[1]

On June 1, 2012, Defendant filed a Motion to Decertify the Class. (Dkt. 188.) Defendant made two primary arguments in support of the motion. First, Defendant argued there was no common method to identify the class or adjudicate liability. Instead, the parties required an unmanageable, file-by-file analysis. Second, Defendant argued intervening United States Supreme Court authority, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 388 (2011), made clear that Plaintiff could not rely upon allegations alone but had to provide evidence to support her contention that class certification was appropriate.

On November 15, 2012, the magistrate judge issued an order denying the Motion to Decertify the Class and granting Plaintiff's Motion to Compel ("2012 Order"). (Dkt. 209.) The 2012 Order also granted Defendant's Motion for Leave to File Supplemental Statement (Dkt. 158) and stated that the Court reviewed the parties' filings related to Plaintiff's proposed class list as background for deciding the pending motions to compel and decertify. *Id.*

Ultimately, the 2012 Order concluded that the Idaho Rate Manual's "reasonable proof" language "prevents decertification because it is a factual matter that cannot be determined at this stage of the litigation." *Id.* at 12. It appears that the 2012 Order relies on two assumptions: (1) Defendant's Motion to Decertify depends on a finding that direct

---

[1] Defendant effectively opposed the motion as well as reflected in its submissions concerning Plaintiff's proposed class list and its motion to decertify. (Dkts. 152, 158-171, 181, 188, 193).

**MEMORANDUM DECISION AND ORDER - 6**

evidence of a prior policy is a prerequisite to class membership and liability and (2) the reasonable proof requirement "will simplify discovery because sufficient proof can be easily ascertained through electronic searches." *Id.*

Defendant initially filed objections to the 2012 Order on December 3, 2012 consistent with Federal Rule of Civil Procedure 72(a). After filing its initial objections and before this Court had ruled on them, Defendant filed eleven additional notices of supplemental authority in support of its Motion to Decertify.

On May 22, 2017 the Court issued an order requesting a single, updated objection to the 2012 Order. (Dkt. 231). On June 22, 2017, Defendant filed Renewed Objections to the November 15, 2012 Report and Recommendation ("Renewed Objections"). (Dkt. 232). Plaintiff was provided an opportunity to file an updated response to the objection but elected not to do so and instead rests on her initial Response to Defendant's Objections to the November 15, 2012 Order. (Dkt. 211). The matter is now ripe for the Court's decision.

## ANALYSIS

The 2012 Order denying class decertification is a nondispositive matter referred to the magistrate judge in the Court's initial Scheduling Order. (Dkt. 18.) In its review of the 2012 Order, the Court must consider Defendant's objections and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A).

**1.      Standard for Decertification**

District courts have broad discretion to determine whether a class should be certified in the first instance and may revisit that certification decision throughout the legal

**MEMORANDUM DECISION AND ORDER - 7**

proceedings. Pursuant to Rule 23, "an order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Case law further makes clear that "[a] district court may decertify a class at any time." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009.)

The standard for class decertification is the same as class certification: the Court must be satisfied that the Rule 23 prerequisites are met. *Marlo v. United Parcel Service*, 639 F.3d 942, 947-48 (9th Cir. 2011). In deciding whether to decertify a class, the Court may consider "subsequent developments in the litigation." *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982). These developments may include "materially changed circumstances" or the "occurrence of a condition on which the initial class ruling was contingent." *See* 3 William B. Rubenstein, Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 7.47 (4th ed. 2012) (citations omitted).

The Rule 23 prerequisites for certification are two-fold. First, the class action plaintiff must demonstrate the following Rule 23(a) requirements:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 345.

**MEMORANDUM DECISION AND ORDER - 8**

In this case, Plaintiff requested class certification for an unjust enrichment claim under Rule 23(b)(3) alleging predominance. The predominance finding requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The matters for the Court to consider in the Rule 23(b)(3) predominance determination are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.*

At the class certification stage, the Court concluded that that Plaintiff had satisfied all of the Rule 23(a) requirements and the predominance requirement under Rule 23(b)(3). (Dkt. 95). However, as the 2012 Order appropriately described, "class certification was predicated on the assumption that Plaintiff could and must identify class members through discovery." (Dkt. 209.)

After the Court certified the class in this case, the United States Supreme Court decided *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In that case, the United States Supreme Court held that, at the class certification stage, the class action plaintiff "must be prepared to prove" compliance with Rule 23 standards. "[S]ometimes it may be necessary

**MEMORANDUM DECISION AND ORDER - 9**

for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* at 350 (internal quotation omitted).

## 2. The 2012 Order Denying Defendant's Motion to Decertify the Class Was Clearly Erroneous.

The 2012 Order is clearly erroneous for three reasons: (1) it incorrectly presumes that decertification is contingent upon a finding that direct proof of a policy is required to establish eligibility for the reissue rate; (2) it ignores the individual nature of proof required to adjudicate liability; and (3) it ignores additional evidence in the record, including practical limitations on discovery and associated difficulties in ascertaining the class, that demonstrate this case is not manageable as a class action.

### A. *Reasonable Proof of a Prior Policy*

The 2012 Order correctly found that liability in this case does not require direct proof of a prior policy. Rather, liability requires "reasonable proof of a prior policy," which is a factual issue. The problem is the 2012 Order does not adequately consider the impact of this fact-specific, "reasonable proof" requirement in terms of adjudicating liability on a class-wide basis.

In this case, liability is contingent upon violations of the Idaho Rate Manual. The class action theory of liability against First American is unjust enrichment. The common allegation is that First American charged some of its customers; i.e., class members, rates in excess of the filed rates set forth in the Idaho Rate Manual.

Under the express terms of the Idaho Rate Manual, the reissue rate applies provided either: (1) "[t]he prior policy or a copy thereof is presented to the issuing company and

shall be retained in the issuing company's file" or (2) "in the absence thereof, reasonable proof of [prior] insurance is provided to the using company." (Dkt. 53-2, p. 23.) Thus, to determine whether First American wrongfully denied the reissue rate in each individual case will depend entirely upon the individual details of each title insurance transaction and whether: (1) there was a prior policy or copy thereof maintained in the file or (2) in the absence thereof, whether reasonable proof of a prior policy was provided to First American.

The record reflects that First American's examiners applied different approaches to the "reasonable proof inquiry." (Dkt. 53-3.) This, however, does not assist the court in determining what the Idaho Rate Manual actually requires. It is simply evidence of what First American interpreted "reasonable proof" to be and, at least in some circumstances, reasonable proof could be obtained through direct contact with another title insurance company. *Id.* It is not clear how or whether that contact would appear in the transactional record. *Id.*

Regardless, because direct evidence of a prior policy is not required and "reasonable proof" is sufficient, the Court is left with a highly individualized approach to liability. In each case, First American's liability will rise and fall on the specific information available for each class member's transaction. The undersigned finds this fact-specific approach to liability undermines the Court's finding of predominance under Rule 23(b)(3). Rather than conducting a single liability inquiry, the fact-finder will be left with potentially thousands of liability determinations. In light of these individualized liability determinations, the Court finds that questions of law or fact common to class members no longer predominate over questions affecting only individual members and class decertification is warranted.

**MEMORANDUM DECISION AND ORDER - 11**

In addition, the individualized nature of the liability inquiry combined with the record outlining Plaintiff's difficulties in identifying class members, also undermine the Court's finding of commonality. Rule 23(a) requires common questions capable of proof that generates common answers. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 349-50. Each of the class members' claims "must depend on a common contention" that is "of such a nature that it is capable of classwide resolution- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

> What matters to class certification is not the raising of common questions- even in droves- but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.*

In this case, determining whether "reasonable proof of a prior policy" existed in one class member's transaction is not common evidence to answer that same question in another class member's transaction. Whether each member was entitled to the reduced rate will depend on the evidence presented in each transaction.

By allowing "reasonable proof of a prior policy," the Court expanded the world of proof that would be considered in each of these transactions. Thus, instead of leading to the conclusion that decertification was not warranted, this finding leads to the inevitable conclusion that proof of liability as to each class member is too highly individualized to sustain continued class certification.

**MEMORANDUM DECISION AND ORDER - 12**

### B. The Court's Assumptions Regarding Preponderance and Manageability Have Also Proved to Be Incorrect in Light of Discovery Obstacles and Substantial Problems Associated with the Proposed Class List.

As the 2012 Order correctly states, "class certification was predicated on the assumption that Plaintiff could and must identify class members through discovery." (Dkt. 209). However, the record in this case reflects that, contrary to the Court's assumptions at class certification, examining the electronic files to ascertain class members has not been "an almost automatic process." (Dkt. 95.) Instead, the Plaintiff encountered substantial problems searching and analyzing the data produced in discovery. These problems resulted in a proposed class list fraught with error. Based on these post-certification developments, the Court must now conclude that this case ultimately proved to be unmanageable as a class action, an additional justification for decertifying the class for lack of predominance under Rule 23(b)(3).

As a preliminary matter, Plaintiff did not have the benefit of the independent agents' discovery at the time she submitted her proposed class list. However, she *did* have the benefit of First American's data with regard to the direct-issued policies. Nevertheless, based on electronic searches of these records, Plaintiff's proposed class list yielded a 91% error rate. (Dkt. 158).

Moreover, First American argued at class certification that it did not have the data necessary to identify potential class members in Idaho. (Dkt. 53.) At that time, the Court rejected the argument finding it "strained credulity" to believe this information was not available and subject to collective processing and searching.

**MEMORANDUM DECISION AND ORDER - 13**

However, the post-certification record makes clear that there are substantial practical problems associated with reviewing the data available to ascertain class members. (Dkt. 158.) Ultimately, Plaintiff was required to conduct a file-by-file review of First American's records to ascertain class members. While Plaintiff may have been willing to do the work, the process proved to be too great. This appears to be a direct result of the manner in which the files were maintained. Electronic searches proved to be substantially more difficult than Plaintiff or the Court appreciated at the time of class certification. Nonetheless, the error rate in the proposed class list cannot be ignored. It is overwhelming evidence in support of the Court finding that the fact-specific inquiry into class membership, like that of proving liability, is not manageable on a class-wide basis.

Compelling the independent agents' files will not cure these deficiencies. The record supports a finding that, like First American, the independent agents do not maintain electronic data sufficient to determine which transactions were entitled to but did not receive the reissue rate. (Dkt. 180.) Accordingly, compelling the agents to produce their data does not make this case more suitable for class-wide adjudication. It simply increases the number of transaction-specific inquiries that need to be made to determine who was overcharged in violation of the Idaho Rate Manual.

In sum, the Court finds the Plaintiff's difficulties in ascertaining class members to further highlight the problems with maintaining this action as a class action. Simply put, the record reflects that Plaintiff met with substantial problems analyzing Defendant's data as reflected by the extremely high rate of error in Plaintiff's proposed class list. This post-

certification record leads the Court to the inescapable conclusion that this case is unmanageable as a class action and decertification is warranted.

### C. The Court's Decision is Consistent with the Overwhelming Weight of Case Law in Similar Title Insurance Cases Throughout the Country.

Many other courts in other reissue rate cases have rejected class certification or decertified class actions given the individualized nature of the proof involved in determining appropriate title insurance rates. *See e.g., Ahmad v. Old Republic Nat. Title Ins. Co.*, 690 F.3d 698 (5th Cir. 2012) (reversing district court decision certifying class because there were no common questions capable of class-wide determination; evidence necessary to show liability and damages could not be easily summarized; and there is no proxy indicator "legally sufficient" to establish a borrower's entitlement to reissue rate); *Scott v. First American Title Ins. Co.*, 276 F.R.D. 471 (E.D. KY 2011) (denying certification for lack of commonality because liability requires individualized fact-specific inquiries and there are no common answers or method to determine liability); *Randleman v. Fidelity Nat. Title Ins. Co.*, 264 F.R.D. 298 (N.D. Ohio 2009) (decision decertifying class because class membership definition required prior institutional mortgage and not all class members with prior institutional mortgage possessed prior title insurance policy entitling them to reissue rate; therefore, no class-wide theory of liability existed); *Chesner v. Stewart Title Guaranty Co.,* No. 1:06 CV 00476, 2009 WL 585823 (N.D. Ohio Jan. 9, 2009) (same).

The common thread in these cases is that there is no easy proxy or common proof to determine liability in title insurance refinance cases and no common questions capable

**MEMORANDUM DECISION AND ORDER - 15**

of class-wide determination. This seems to be a reflection of industry practice in which individual agents were authorized to assess each borrower's entitlement to the discounted reissue rate. *See Scott v. First American Title Ins. Co.*, 276 F.R.D. at 478 ("[T]he only pervasive pattern Plaintiffs convincingly establish is First American's practice of allowing title agents to assess the borrower's entitlement to and apply the appropriate discount rate in each of its real estate transactions."). As a result, the trial courts and fact finders must examine each transaction to determine whether the individual was entitled to, but did not receive, the reissue rate. This type of individualized approach is not the appropriate subject of a class action lawsuit.

## CONCLUSION

In sum, decertification is warranted. The record no longer supports the Court's initial findings of predominance and commonality necessary to maintain class certification under Rule 23.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion to Decertify (Dkt. 188) is GRANTED as stated herein.

DATED: August 1, 2017

Edward J. Lodge
United States District Judge

**MEMORANDUM DECISION AND ORDER - 16**